LEIGH M. CLARK, Retired Circuit Judge.
A jury found appellant guilty under an indictment charging him with buying, receiving, concealing or aiding in concealing a ’74 model Chevrolet Impala automobile of the value of $2,550.00, knowing that it was stolen, or having reasonable grounds for believing that it was stolen, and not having the intent to restore it to the owner. The court fixed his punishment at five years imprisonment and sentenced him accordingly-
The owner of the automobile was Michael Beams. His wife, Mrs. Clara Beams, testified that on the morning of June 12, 1978, she drove the automobile to a downtown bank where she worked, left the automobile and its key in the custody of a parking lot attendant and then went to her work for which she was late. About 4:00 that afternoon she went for her automobile and found that it was not at the lot. It seems to be undisputed that the automobile was stolen from the parking lot between about 11:00 A.M. and 4:00 P.M. that day.
Michael William Beams, son of the owner of the automobile and his wife, testified that on the afternoon of June 30, 1978, his father sent him to a grocery store on Sky-land Boulevard to purchase some items. He went in his father’s truck, and, as he was in the process of placing the items in the back of the truck, he “looked over and saw a brown car that looked like” the stolen automobile. According to his further testimony, he left the grocery store area for a short time, asked someone to call the police, and returned to the place where he saw the automobile and waited for the police to arrive. While waiting on the police, he saw appellant approach the automobile, go to the trunk thereof as if “to put his groceries in,” and he had his key in his hand. He further said:
“I went over and asked him if it was his car and he said no, it was his little brother’s, that he had borrowed it to come buy groceries and I told him I had called the police to come pick up the car, that it was stolen and for them not to go anywhere.”
Appellant stayed as directed by young Beams until the police arrived within about five minutes. A police officer testified that he answered the call and was informed by defendant that he did not own the automobile but that he had borrowed it from his little brother.
The testimony narrated above constitutes all of the testimony directly bearing on the matter of the theft of the automobile on June 12, and as to what occurred and what was said by defendant as to his custody or possession of the automobile while in the vicinity of the grocery store on June 30.
The only issues expressly presented on appeal are based primarily on matters arising during the testimony of appellant’s “lit- *638 tie brother” and the testimony of Officer Harold Jones,1 both witnesses called by the State.
Larry Warren, defendant’s “little brother,” sixteen years of age at the time of the alleged crime and seventeen years of age at the time of the trial, testified in part as follows:
“Q. All right, and how did you become acquainted with this vehicle?
“A. Well, I bought it.
“Q. You bought it?
“A. Yeah.
“Q. What did you pay for it?
“A. Six hundred and fifty dollars.
“Q. Six hundred and fifty dollars? All right, sir, do you have a job?
“A. No, sir.
“Q. Where did you get the six hundred and fifty dollars?
“A. I get Social Security from my dad. “Q. Social Security?
“A. Yeah.
“Q. How much do you get a month? “A. Eighty-nine.
“Q. Eighty-nine dollars and you used that money to buy the car?
“A. Yes, sir.
“Q. How many cars have you had in the past?
“A. Four.
“Q. Four? Did you buy all those cars? “A. Yes, sir.
“Q. And did your brother help you get one of those cars?
“A. One.
“Q. One. What kind of car was it? “A. Chevrolet. •
“Q. What model?
“A. Seventy-two.”
The witness further testified that he bought the automobile described in the indictment at a club from a person he did not know, who had the car at a parking lot with a for sale sign on it. He said he didn’t know “the dude’s name” but that he was, “Tall and had black hair and he was white.”
According to further testimony of Larry:
“Q. Did you keep it at your home? “A. Yeah.
“Q. And you kept it in your possession for two weeks?
“A. For a week.
“Q. For a week. Okay. At the end of that week, what did you do with it? “A. I left my brother drive it.
“Q. You let your brother drive it?
“A. Yeah.
“Q. And which brother are you talking about?
“A. Dan.
“Q. Okay. How long did Dan have the car?
“A. He had it for a week.
“Q. He had it for a week?
“A. Yeah.
“Q. Did he keep it at his house?
“A. I don’t know where he kept it at. “Q. You didn’t see it for that whole week?
“A. That is right.
“Q. What happened at the end of that week?
“A. I got it back and he said he wanted to borrow it to go to the grocery store. “Q. Now isn’t it a fact, Mr. Warren, that you told the police and you told me yesterday that you gave the car, you kept the car about a week and gave it to your brother to use and just told him to keep it?
“A. Yeah, I told him — you asked him did I tell him he could have it.
“Q. Didn’t you tell him to keep the car and use it?
“A. Yeah.
“Q. All right. And you didn’t say anything to us about him bringing it back that day did you, either time when you were talking to the police or me?”
Promptly after the last question, defendant’s counsel objected, and the court said, “You may refresh his recollection.” Thereafter, counsel for the State continued to question the witness as to what he had previously stated, and defendant’s counsel *639 renewed his objection, and the court ruled that State’s counsel could refresh the recollection of the witness as to what he had previously stated with reference to the stolen automobile that he had let his brother, the defendant, have. Thereupon, counsel for defendant asked the witness about some keys to another automobile that “were taken from you by the police officer.” The testimony of the witness continued as follows:
“Q. What were those keys to?
“A. To my car.
“Q. To your car?
“A. Yeah.
“Q. What kind of car was it?
“A. Seventy-two Chevrolet.
“Q. And did this happen approximately six months before you bought the 1974 Chevrolet?
“A. I don’t know.
“MR. CORNWELL: Your Honor, we object to this line of questioning.
“THE COURT: I don’t believe you can go into that.
“MR. MADDOX: If Your Honor please, we expect to connect this up by other witnesses. We have four other witnesses coming in to connect up this information but subject to connecting it up I need to lay the predicate.
“MR. CORNWELL: May we approach the bench, Your Honor, to see wRere Mr. Maddox is going?
“THE COURT: I will sustain the objection.
“Q. The keys were to your Chevrolet though?
“A. Yes, sir.
“Q. Was that Chevrolet that your brother—
“MR. CORNWELL: We object to Mr. Maddox’s questioning him about another automobile.
“THE COURT: Let’s don’t go into that. “Q. You testified earlier your brother helped you get a 1972 Chevrolet, is that correct?
“MR. CORNWELL: We object, Your Honor.
“MR. MADDOX: He testified to this. “THE COURT: Move on, gentlemen.
“Q. Is that the same car?
“A. Yes, sir.
“MR. MADDOX: Nothing further.
“THE COURT: Anything further for the defendant?
“MR. CORNWELL: Yes, sir, Your Hon- or.
“THE COURT: All right.
“MR. CORNWELL: We have some questions, Your Honor.
“THE COURT: All right. I don’t want to be unreasonable, but I would like to move on as fast as possible. I have some more cases to try.
“MR. CORNWELL: Your Honor, may we approach the bench?
“THE COURT: Yes, sir.
“MR. CORNWELL: Your Honor, the defense would object to the statement of the Court just now to the jury. We object on the ground that it is prejudicial to the defense case.
“THE COURT: Overruled.
“MR. CORNWELL: We move for a mistrial on those grounds.
“THE COURT: Overruled. Ladies and Gentlemen, if my comment about hurrying along in any way makes you feel like you could not give the defendant a fair trial will you indicate by raising your hand. If anything I said makes you feel like you could not give this defendant a fair trial would you please indicate it by raising your hand. All right, let’s go ahead gentlemen.”
At that point cross-examination of the witness was commenced by defendant’s counsel. He immediately showed by the witness that the stolen 1974 Chevrolet had dents on it, that the paint was “scratched up” and that the back was bent. After showing by the witness that he had the automobile about two hours between the time defendant had returned it to him after using it for a week and the time defendant borrowed it again to go to the grocery store, the witness was asked as to the 1972 Chevrolet that he had said he had pur *640 chased and that defendant had helped him purchase. The witness said that he had purchased that automobile over “behind the Greyhound Bus Station” at a used car lot and that defendant bought it “in his name.” On redirect examination, while counsel for the State was referring to the 1972 Chevrolet, the following occurred:
“Q. All right, now are those the only keys you have had taken away from you by the police?
“MR. CORNWELL: Your Honor, we object to Mr. Maddox going into that. “THE COURT: Overruled. You can refresh his recollection.
“MR. CORNWELL: Your Honor, there has been no he is doing so.
“MR. MADDOX: He testified earlier the police took the keys from that car.
“THE COURT: Move on, gentlemen. “MR. CORNWELL: Your Honor, may I get the ruling on my objection.
“THE COURT: Overrule the objection. “Q. Are those the only ones?
“A. Yeah.
The only witness called by the State after Larry Warren had testified was Mr. Harold Jones, an investigator for the Tuscaloosa Police Department. After some preliminary questions, the following occurred on direct examination:
“Q. I will ask you to state whether or not you had the occasion to obtain some automobile keys from the defendant’s brother, Larry Warren?
“MR. CORNWELL: We object to this whole line of questioning. May we approach the bench?
“THE COURT: No, let’s go ahead, gentlemen. I overrule the objection. Let’s move on. We can’t get bogged down in some side issues. Go ahead.
“MR. CORNWELL: Your Honor, may we approach the bench?
“THE COURT: No, sir, we don’t have time to keep coming up to the bench. We have a lot of other cases to try. I’m not trying to deny anybody their right to a fair trial.
“MR. CORNWELL: We object to Your Honor’s statement about other cases to try.
“THE COURT: Overrule the objection. “MR. CORNWELL: We move for a mistrial.
“THE COURT: Overrule the motion for a mistrial.
“Q. Mr. Jones, did you have the occasion to obtain some keys from Larry Warren? “A. Yes, sir, I did.
“Q. When did you do that?
“A. November 27, 1977.
“Q. All right, sir, what kind of keys were they?
“A. They were keys to a 1976 Pontiac. “Q. What color was that Pontiac?
“A. White.
“MR. CORNWELL: We object.
“THE COURT: Overruled.
“Q. And do you know who owned that Pontiac?
“A. Yes, sir.
“Q. Who owned it?
“MR. CORNWELL: We object.
“THE COURT: Gentlemen, I am going to have to sustain the objection. I don’t think we can get into any other—
“MR. MADDOX: May it please the Court, we have some law to cite to Your Honor.
“THE COURT: I don’t think we can go into any other vehicles.
“MR. MADDOX: May we approach the bench?
“THE COURT: Yes, sir. I will overrule. Let’s don’t get into any other vehicles. “MR. CORNWELL: Are you sustaining my objection?
“THE COURT: I am sustaining the objection to any other vehicles.
“MR. MADDOX: May we have a hearing in chambers on this?
“THE COURT: No, sir, I am ready to move on. Have a seat, gentlemen. My ruling is final.
“Q. Did Larry Warren own that car? “A. No, sir.
“MR. CORNWELL: Your Honor, again we object to this line of questioning.
*641 “THE COURT: I will say, gentlemen, we cannot discuss any other vehicles.
“MR. MADDOX: Your Honor, we respectfully except to Your Honor’s ruling and cite to Your Honor 40 Ala.—
“MR. CORNWELL: Your Honor,.we. object to counsel testifying in Court.
“MR. MADDOX: I am not testifying, I am assigning cases.
“THE COURT: Sustain the objection to any other vehicle.
“Q. Are you familiar with the reputation of Larry Warren in the community in which he lives?
“MR. CORNWELL: Your Honor, I object.
“THE COURT: Sustain the objection.
“MR. CORNWELL: Object to him impeaching his own witness.
“THE COURT: Sustain the objection. “MR. MADDOX: May it please the Court may we approach the bench?
“THE COURT: I don’t want to hear any arguments about it. I’ve been on the bench fifteen years and I have some idea about the way a case should be tried. I am ruling now we can’t go into these other matters. I want to be fair to both sides, gentlemen.
“MR. MADDOX: May we please have a hearing in chambers about it?
“THE COURT: No, sir.
“MR. MADDOX: No further questions. “MR. CORNWELL: I have no questions of this witness, Your Honor.
“MR. MADDOX: The State rests.”
Thereupon there was a motion by defendant to exclude the evidence, which was overruled. Then defendant renewed his motion for a mistrial, saying:
“. . .We make another motion for a mistrial based on the accumulative effect of Your Honor’s statement of the witnesses Mr. Maddox has called and that Mr. Maddox has gone into repeatedly after the defense’s objections were sustained and it is the defense’s feeling that the total tenure of all that is so prejudicial on the jury that the defendant cannot get a fair trial.”
To which the court responded, “Overrule. Now, gentlemen, may we move along with reasonable dispatch.” After further colloquy among the court and the respective parties, defendant’s counsel announced that defendant rested.
During the argument to the jury of counsel for the State, the record shows:
“. . . Well, where is that bill of sale? We had to put Larry Warren on that stand because of the second thing about the law I want to tell you about that Mr. Sullivan has already told you. If you can say that because a recently possessed something in other words they possessed it right after it was stolen that they probably knew it was stolen then maybe they ought to come up with an explanation for how they came to have that stolen property and we had to put that explanation on for you and the reason is we wanted to see, wanted you to see just how unreasonable a cock and bull story was—
“MR. CORNWELL: Your Honor, we object to that. Mr. Maddox is impugning his own witness.
“THE COURT: Go ahead, overrule the objection.
“MR. MADDOX: Thank you. Yes, I am impugning my own witness. He is the brother of the defendant and I submit to you that they had a common scheme going.
“MR. CORNWELL: Your Honor, I object to that. There is no evidence to that. “THE COURT: Overruled.
“MR. MADDOX: I submit to you they had a common scheme going whereby probably Larry Warren stole the car or maybe he did; I don’t know but the story was set up that if he got caught they were going to blame it on Larry. Why? Larry is a juvenile.
“MR. CORNWELL: We object to that, Your Honor.
“THE COURT: Overruled.
“MR. MADDOX: Larry is a juvenile. He has tried to blame his little brother and his little brother would get up and say oh, yeah, because his little brother knows nothing would happen to him.
*642 “MR. CORNWELL: We object to that, Your Honor.
“THE COURT: Overruled.
“MR. MADDOX: So what do we have here? Do we have a reasonable explanation of why he had that ear? No, ladies and gentlemen, we don’t. We just don’t. We don’t have any bill of sale. We don’t have anything but a cock and bull story about totting $650 in cash around just bopping down the road and he sees a for sale sign and buys the car and then he gets caught and he tells the police oh, it belongs to my brother, I just borrowed it to come to the grocery store and then his brother tells the police as his brother said from the stand, oh, I let Larry I let Dan have the car about a week after I got it and said just keep it and use it and then he comes up to court here and says that day he brought it back to me and then he came back again a couple of hours later and asked to borrow it again to go to the grocery store. . . . ”
During the oral charge to the jury, the court said:
“The burden is not cast upon the defendant but you have the duty, ladies and gentlemen, to analyze the evidence and carefully consider it because you bring here and we know that you bring here to the jury box your common sense, your knowledge of men and their affairs. If somebody comes in here with a cock and bull story so to speak, your common sense I am sure will tell you such story is not true. So I am saying to you that you determine who is telling the truth and you analyze the evidence and use your common sense accordingly. . . .”
In taking the exceptions to the court’s oral charge, the record shows:
“MR. CORNWELL: Back on the record. Your Honor, the defense respectfully excepts to Your Honor’s comment about someone comes into court with a cock and bull story you know is not true, you can consider that specifically that attracts to the language of Mr. Maddox closing about the testimony of Larry Warren and the defense objects to that as a comment on the evidence or comment on Mr. Warren’s testimony, Mr. Larry Warren.
“THE COURT: All right. It was not my intention to say that anybody told a cock and bull story. I didn’t mean to infer that but I am not criticizing your objection but I was trying to impress upon the jury they determine what the truth is. Well, I will overrule the objection.”
The portions of the transcript quoted hereinabove have been unusually lengthy in order to reveal fully the objects of all of appellant’s assertions of reversible error, which he sets forth in his brief under three separate headings, I, II and III.
I
Appellant here contends that the court “erred in overruling appellant’s objections to the State’s efforts to impeach its own witness.” It is obvious that the reference is to the witness Larry Warren. It is readily observable from portions of the transcript quoted above that, although the witness was called by the State, he was understandably reluctant. Furthermore, some of his testimony evoked a statement from State’s counsel that he was surprised by the testimony of the witness. At one point, counsel for the State asked him if he had not told the police and told State’s counsel the day before that he had given the automobile to his brother to use and told his brother “to keep it.” Appellant contended on the trial, and contends now, that such a question constitutes an effort to impeach one’s own witness. It may well tend to lead to an effort to impeach one’s own witness, but it does not in and of itself constitute an effort to impeach one’s own witness. It constitutes an effort to refresh the recollection of one’s own witness, as the trial court ruled, as it should have done, that when a party is taken by surprise by the testimony of a witness called by him, he may refresh the recollection of the witness by asking him as to previous statements made by him that are at variance with his testimony. Gamble, McElroy’s Alabama Evidence, § 165.01(7) (1977), with authorities cited.
*643 ii
Under this category, appellant contends that the court “erred in overruling appellant’s objection to questions about other vehicles and in overruling objections to improper, argument by the State’s attorney.” We here consider both phases of that insistence.
As to appellant’s objection to questions about other vehicles, it was earnestly urged by counsel for the State that defendant’s connection with activity of his brother, Larry Warren, sixteen years of age at the time, in procuring other automobiles, was pursuant to a plan or system designed by defendant whereby the two brothers by working together would obtain automobiles by larceny or the like, and for that reason evidence to that effect came within one of the exceptions to the rule of exclusion of evidence as to other crimes, for which there is ample authority. See McElroy’s Alabama Evidence, § 69.01(6) (1977). However, the court in the exercise of its discretion as to the extent the State should go in this respect, repeatedly sustained defendant’s objections to questions as to automobiles other than the one specified in the indictment in the instant case. It invariably sustained the objection except in two instances. One was as to a 1972 Chevrolet, as to which objections were sustained until defendant asked the witness some questions as to that automobile, which opened the door for further questions by State’s counsel as to it. The other instance was during the direct examination of Mr. Harold Jones, a witness for the State, which is quoted hereinabove. It is readily observable therefrom that there was nothing to indicate that the automobile as to which the witness was questioned was any automobile other than the 1972 Chevrolet. At that time, the court overruled defendant’s objection, but later when it developed that the automobile questioned about was a Pontiac, the court stated, “I am going to have to sustain the objection. I don’t think we can get into any other—.” The court continued to rule with the defendant on the point. We find no prejudicial error in any of the court’s rulings on defendant’s objection to questions about other vehicles.
The court was correct in overruling defendant’s objection to argument of counsel for the State to the effect that the evidence justified an inference that defendant, about a decade older than his juvenile brother, was aware of, if not responsible for the juvenile’s behavior.
Ill
By his third insistence on reversible error, appellant says that the court “erred by making prejudicial comments during the trial and by commenting on the evidence.” The targets of this contention have been quoted hereinabove. Included are two statements, during the time witnesses were being examined, to the effect that the court had other cases to try, that they didn’t have time to keep coming up to the bench and that they should move on as fast as possible. If there were anything in the record to indicate that the court’s concern as to delay on the trial was directed exclusively to defendant, it can be readily seen that the defendant could have been injured thereby. To the contrary, the record shows conclusively that the court was acting with absolute impartiality in its remarks, which of itself negates the charge that said comments were “prejudicial.”
Another contention of appellant under his third assertion of error is as to that part of the court’s charge, quoted herein-above, as to a “cock and bull story.” It is unfortunate, we think, that this graphic language was the same as that used by State’s counsel in his argument to the jury. Even so, it is clear to us that the use of it by the trial court bore no implication of any leaning toward the State; there is nothing in what was said, or in any other part of the transcript, to indicate that the court felt that there was any “cock and bull story” in the case. The agreement between the court and State’s counsel in the language of the four-word metaphor does not connote agreement between the court and State’s counsel as to the credibility of any of the *644 evidence. The sensitiveness of the defendant to the particular language under the circumstances is understandable, but the repeatedly manifested impartiality of the court throughout the trial underscores our conclusion that the use of the expression in the court’s oral charge was not harmful to defendant.
We find no error in the record prejudicial to the defendant. The judgment of the trial court should be affirmed.
The foregoing opinion was prepared by Retired Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under the provisions of § 6.10 of the Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court. The judgment of the trial court is hereby
AFFIRMED.
All the Judges concur.