The defendant was indicted and convicted for burglary in the third degree. He was sentenced as an habitual offender to ten years' imprisonment. Two issues are presented on appeal.
 I
The defendant vigorously argues that his confession was involuntary because it was the product of "a distinct hope of a lighter sentence or punishment, or total forgiveness" created by the statements of the arresting officer.
During the early morning hours of August 2, 1980, the Interstate Gulf Station in Alabaster was burglarized. Upon learning that the defendant had recently been dismissed from employment at the station, Shelby County Sheriff's Deputy John Pratt telephoned the defendant's mother and told her that "it appeared" that the defendant was involved in the burglary and "if he was for her to go talk to him." Mrs. Bennett said that she would go to her son's residence and talk to him and see if he was involved. "If he was involved she said that she would get the property and call" Deputy Pratt.
Around noon on the 2nd of August, Deputy Pratt went to the defendant's residence to question him about the burglary. Pratt testified that he had probable cause to believe that the defendant was a participant in the crime. In the past Pratt had been involved in two criminal investigations of the defendant.
Deputy Pratt and Sergeant Davenport arrived at the residence of the defendant and found the defendant and Walter Strickland in the yard. Pratt took the defendant aside and told him that he wanted to talk to him. Pratt stated that before any conversation was had with the defendant he advised him of hisMiranda rights: "I told him I wanted to talk to him, that he knew what I was there about, and I made a reference of had he talked with his mother, and he said yeah, she either called or came by there. That is when we started talking. I said, `You don't have to talk to me.' That is when I told him (his Miranda
rights). This was all done outside." The defendant said "that was fine." Pratt testified:
 "A. . . . I informed Pat (the defendant) it appeared to me he was in some trouble, and I wanted to get to the bottom of it, and if he was in trouble — I meant involved in the burglary at Interstate Gulf — that we wanted to try and get back as much of the property as we could before the stuff was disposed of.
"Q. What was his response to you?
"A. He knew what I was talking about.
"Q. What did he say?
 "A. He said, `I know I am in trouble. What is the best way out for me?'"
* * * * * * *Page 938 
 "A. I told him, when he asked me what he could do, that he realized he was in trouble, I told him the best thing he could do was tell the truth and help us get the property back, if they had not already disposed of it, that things would be better if we could get the property back and satisfy the victim.
"Q. Things would be better?
"A. Yes, sir.
"Q. What type of things would be better?
 "A. As I stated to him, we would be able to introduce into court that he cooperated, was my exact words, that I would tell the court, the District Attorney and the Judge that he cooperated with us in this burglary investigation."
* * * * * *
 "A. As I stated before, I told him my best recommendation to him was to tell the truth and if he was involved to help us recover the property."
* * * * * *
 "A. . . . I told him I would tell them he cooperated and helped us recover the property, if he was involved."
The defendant testified that Deputy Pratt did not advise him of his rights before he "told me I was in a lot of trouble and told me he was talking about the service station."
 "He (Deputy Pratt) asked me if I knew anything about it, and I told him yes. I told him I knew I was in trouble and how would be the easiest way for me to go about getting out of it. * * * He told me to tell where everything was and he would help me. * * * He told me he would talk to the D.A., and he said everything might go easier in court if I helped him."
On cross examination by the Assistant District Attorney, the defendant stated Deputy Pratt never promised him that it would go easier and never promised that his sentence would be lighter if he talked to him. Pratt did not tell the defendant that he could make it go easier.
The defendant, on redirect, testified that his statement was given in response to Officer Pratt's statement that he would help if he could; that "he would talk to the D.A. and the Judge and see if he could make it go easier."
On the 4th of August, the defendant signed a written statement after signing a waiver of his constitutional rights.
Before the jury, Officer Pratt testified that, upon arriving at the defendant's residence, he advised the defendant that he would like to talk to him and then advised the defendant of hisMiranda rights. Pratt testified that he then stated to the defendant
 "that he was aware of what I wanted to talk to him about; that it was in regards to the burglary that had occurred the previous night or the early part of the morning at the Interstate Gulf Station. I asked him if his mother had contacted him or come down to see him or talk to him, and he said he had talked to his mother, and that he knew he was in a lot of trouble."
* * * * * *
 "My response to him, if he was in trouble was for him to tell the truth, and if he was involved to help recover the stuff, if it had not been disposed of."
Pratt further stated that at this point the defendant wanted to go inside his trailer and talk to his wife: "(H)e stated he was concerned about the other Defendant, or Co-defendant in the case, but he stated that this subject would fall under the habitual criminal law, and if he told the whole truth on this matter, that this subject would serve a lot of time in the pen."
Deputy Pratt responded:
 "I told him at that time if he was involved in it, that he should be concerned about himself and not about the co-defendant, and at that time I let him go into the trailer to talk to his wife."
We have gone into quite some detail in reporting Deputy Pratt's testimony in an effort to determine exactly what was said and when it was said. Perhaps the case is *Page 939 
clarified by the following portion of Pratt's testimony before the jury.
 "Q. Now, you did, in fact, tell Mr. Bennett at the time that you initially went to his trailer on August 2, 1980, that Saturday morning around noon, that if he would tell the truth that this would be best for him, is that correct?
 "A. When he asked me what I thought he should do, I instructed him the best thing for him to do if he was involved was to tell the truth.
 "Q. And you went on to also tell him you would endeavor in some way to tell the District Attorney and Court of his cooperation in order to help him out?
 "A. He asked me if it would be brought out through the District Attorney and the Court if he cooperated and I told him yes it would."
Although it is disputed exactly what Deputy Pratt told the defendant and when he advised the defendant of his Miranda
rights, this was a matter the trial judge had to resolve. Even where there is credible testimony to the contrary, if the evidence as to the voluntariness of the confession is fairly capable of supporting the inference that the rules of freedom and voluntariness were observed, the ruling of the trial judge that the confession was voluntary need only be supported by substantial evidence and not to a moral certainty. When a conflict occurs in the evidence with respect to the voluntariness of a confession, great weight must be given to the judgment of the trial judge, and his finding of voluntariness will not be disturbed on appeal unless this Court is convinced that his conclusion is palpably contrary to the weight of the evidence. Thompson v. State, 347 So.2d 1371
(Ala.Cr.App.), cert. denied, Ex parte Thompson, 347 So.2d 1377
(Ala. 1977).
In Eakes v. State, 387 So.2d 855 (Ala.Cr.App. 1978), we held:
 "In order to be admissible a confession must be free and voluntary and cannot be the result of any direct or implied promises, however slight. Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964); Shotwell Mfg. Co. v. United States, 371 U.S. 341, 83 S.Ct. 448, 9 L.Ed.2d 357 (1963); Bell v. Alabama, 5 Cir., 367 F.2d 243, cert. denied, 386 U.S. 916, 87 S.Ct. 859, 17 L.Ed.2d 788 (1966); Wallace, supra. The question of whether a confession was obtained by coercion or improper inducement can be determined only by examination of all the attendant circumstances. Boulden v. Holman, 394 U.S. 478, 89 S.Ct. 1138, 22 L.Ed.2d 433 (1969); Wallace, supra. Each case must stand or fall on its own merits for the constitutional inquiry into the issue of voluntariness requires more than a mere `color-matching of cases'. Beecher v. Alabama, 389 U.S. 35, 88 S.Ct. 189, 191, 19 L.Ed.2d 35 (1967). The true test of determining whether extrajudicial confessions are voluntary is whether the defendant's will was overborne at the time he confessed and therefore not the product of a rational intellect and a free will. Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963); Elliott v. State, 338 So.2d 483 (Ala.Cr.App. 1976)"
* * * * * *
 "A promise or inducement for a confession cannot be implied from an exhortation to a prisoner that it is best or better to tell the truth. The rule is otherwise, where the party has been told by a person in authority that it is better for him to confess, or that he will be bettered by saying a particular thing. Edwardson v. State, 255 Ala. 246, 251, 51 So.2d 233 (1951). Here the appellant was only told that it would `be better to make a statement.' This was not tantamount to an urging to confess or to admit guilt. We consider this more consistent with a mere adjuration to tell the truth." 387 So.2d at 859-60.
In United States v. Frazier, 434 F.2d 994, 995-6 (5th Cir. 1970), it was held:
 "Frazier's confession was not involuntary by reason of the single fact that the F.B.I. agents told him that if he cooperated with them his cooperation would be made known to the United States Attorney, that there might be some consideration *Page 940 
given by the United States Attorney but that the agents could make no promises. Standing alone this was not sufficient to establish that appellant's in-custody statement was involuntary. United States v. Ferrara, 377 F.2d 16 (2d Cir. 1967); Fernandez-Delgado v. United States, 368 F.2d 34 (9th Cir. 1966)."
The quoted statement from Frazier was also quoted, approved and applied in Wallace v. State, 290 Ala. 201 (206), 275 So.2d 634
(1973).
"(A) representation that the fact of cooperation will be made known to prosecuting authorities is insufficient to make a confession involuntary. United States v. Curtis,562 F.2d 1153 (9th Cir.), cert. denied, 439 U.S. 910, 99 S.Ct. 279,58 L.Ed.2d 256 (1978)." United States v. Prescott, 480 F. Supp. 554,559 (W.D.Penn. 1979) (The defendant alleged that his oral statements were involuntary because his cooperation was induced by a promise that if he cooperated the F.B.I. Agents would tell the United States Attorney and it would go easier on him.) "(T)elling the (defendant) in a noncoercive manner of the realistically expected penalties and encouraging (him) to tell the truth is no more than affording (him) the chance to make an informed decision with respect to (his) cooperation with the government." United States v. Ballard, 586 F.2d 1060,1063 (5th Cir. 1978) (Defendant told that in return for her cooperation the government would make a recommendation and inform the court of her cooperation); United States v. Morris,491 F. Supp. 226 (S.D.Ga. 1980) (F.B.I. agents told defendant: "If you cooperate, it will go easy on you", and further told him the possible penalties for armed robbery.) See also UnitedStates v. Hart, 619 F.2d 325 (4th Cir. 1980); United States v.Jacks, 634 F.2d 390 (8th Cir. 1980); United States v. Grant,622 F.2d 308 (8th Cir. 1980); Wallace v. State, 290 Ala. 201,275 So.2d 634 (1973); Moss v. State, 347 So.2d 569 (Ala.Cr.App. 1977); Tanner v. State, 57 Ala. App. 254, 327 So.2d 749 (1976).
From the totality of the circumstances here, we conclude that the defendant's will was not overborne and his admissions to Deputy Pratt were voluntarily given.
 II
The defendant's second argument is answered in Motley v.State, 409 So.2d 945, Ala.Cr.App. (1981), wherein we held that "the legislature intended that all felons, whether drug offenders or otherwise, be subject to enhanced punishment under the Alabama Habitual Felony Offender Act when prior convictions have been shown." See also Terrell v. State, 406 So.2d 456, Ala.Cr.App. (1981).
We have searched the record and found no preserved error prejudicial to the substantial rights of the defendant. The judgment of the Circuit Court is affirmed.
AFFIRMED.
All Judges concur.