Kenneth Jay Crozier was indicted for the first degree robbery of one Craig Hunt in violation of § 13A-8-41, Code of Alabama 1975. The jury found the appellant "guilty as charged in the indictment", and, following a sentencing hearing, the trial judge sentenced him to life imprisonment.
Craig Hunt testified that on September 17, 1983, he was the assistant manager trainee at Jack's Hamburgers in Gadsden, Alabama. At the close of business on that day he and Kim Blankenship, the assistant manager, left "Jack's" to make a bank deposit. They drove to the bank in separate cars. Upon arrival at the bank Hunt took the money bag and walked to the night deposit drawer. As he placed the key to the drawer in the slot to open the drawer, he was jumped from behind. Hunt stated that he struggled with a black male, and during this struggle he dropped the money bag. A second black male was standing nearby during the struggle. The struggle ended when Hunt's assailant stuck a gun in his side and shot him. He stated that the second black male picked up the money bag and ran away. He stated that the appellant was the man who picked up the money bag. He further stated that he did not recall anyone saying anything as these events occurred.
Kim Blankenship testified that she followed Craig Hunt to the bank on the night in question. She stated that as she was turning her car around, she observed two black men with Hunt and heard a gunshot. She then called the police.
Ron Leftwich testified that on September 23, 1983, he found a pistol outside his store which was approximately 75 feet from the bank. He turned this gun over to the police officers.
Thomas Croft testified that he was a roommate of the appellant. He stated that he told appellant's nephew, Kenton Hardy, that Hardy would have to move out of the apartment they shared if he did not pay his portion of the rent. He stated that on the night of September 17, 1983, appellant and Hardy left the apartment together. After the appellant and Hardy returned, the three men were talking and Hardy stated that he had to "burn somebody". He further stated that the appellant and Hardy had some money with them upon returning to the apartment.
Jeff Wright testified that he was employed as a detective by the City of Gadsden Police Department. His investigation of Hunt's shooting led him to the gun's owner, J.R. Harrison. Mr. Harrison led them to Thomas Croft. The information he received from Thomas Croft led him to the appellant's apartment. The appellant and Kenton Hardy were arrested at appellant's apartment. Appellant was advised of his Miranda rights and taken to City Hall. Once arriving at City Hall, the appellant was again advised of his Miranda rights and the appellant signed a waiver of rights form.
Sergeant Wright stated that no promises, offers of reward, threats or coercion were placed upon appellant to induce him to sign this waiver. Appellant gave Wright first an oral and then a written statement. The essence of such statements was that the appellant helped plan the robbery. He knew Kenton Hardy was armed and he accompanied Kenton Hardy to the scene of the robbery. He did not participate in the robbery until after Hunt was shot and then he stopped Hardy from shooting Hunt again. He picked up the money bag at Hardy's command and he later shared in the proceeds of this robbery.
The appellant testified that he went riding with Kenton Hardy on the night in question. He stated that he did not know what Hardy was planning to do and did not *Page 1192 
know Hardy was armed. He stated that when Craig Hunt drove past them he began suspecting that Hardy was going to commit a crime. He started walking away from the scene, but when he heard a gunshot he ran toward the bank. He prevented Hardy from shooting Hunt again, then picked up the money bag at Hardy's command. He stated that he only received twenty dollars from Hardy, which was a part of Hardy's share of the rent money.
The appellant stated that he was very upset during questioning by police and he signed a written statement, only after he was promised by police that they would talk to the District Attorney on his behalf. He stated that he signed the statement without reading it and he signed the waiver of rights form at the same time.
 I
The appellant contends that his conviction was based on an involuntary confession. He argues that such involuntariness renders his confession invalid and, thus, inadmissible at trial.
 A
"The State must show voluntariness and a Miranda predicate in order for a statement to be deemed admissible." Thomas v.State, 373 So.2d 1149 (Ala.Crim.App.), aff'd, 373 So.2d 1167
(Ala. 1979). The prosecution brought forth testimony which properly showed that the appellant was advised of his Miranda
rights, that he had not been threatened, coerced or promised any reward for making a statement or otherwise induced, and that he freely and voluntarily waived his rights. "It is the province of the trial judge to first determine the voluntariness of a statement in a voir dire examination outside the presence of the jury, and unless there is clear abuse this discretion will not be overturned." Duncan v. State, 278 Ala. 145, 176 So.2d 840 (1965); Shewey v. State, 48 Ala. App. 730,267 So.2d 520 (1972); Bills v. State, 49 Ala. App. 726,275 So.2d 706 (1973); Hardy v. State, 409 So.2d 996 (Ala.Crim.App. 1982); Snider v. State, 422 So.2d 807 (Ala.Crim.App. 1982);Boggan v. State, 455 So.2d 228 (Ala.Crim.App. 1984).
Further, "[w]hen the evidence on the circumstances surrounding the appellant's confession is conflicting, the trial judge must determine its admissibility. If admitted, then the controverted testimony for the appellant goes to the jury on the confession's credibility. Where the trial judge finds on conflicting evidence that the confession was voluntarily made, its finding will not be disturbed on appeal unless found to be manifestly contrary to the great weight of the evidence."Bennett v. State, 409 So.2d 936 (Ala.Crim.App. 1981), cert. denied, 457 U.S. 1137, 102 S.Ct. 2968, 73 L.Ed.2d 1356 (1982);Hardy, supra; Harris v. State, 420 So.2d 812 (Ala.Crim.App. 1982); Snider, supra; Raines v. State, 428 So.2d 206
(Ala.Crim.App. 1983); Wiggins v. State, 440 So.2d 1164
(Ala.Crim.App. 1983).
We have carefully examined this record and the voir dire examination wherein the statement was inquired into outside the presence of the jury. The trial judge's conclusion that the appellant's statement was voluntary was adequately supported by the facts and thus properly admitted into evidence.
 B
Appellant also contends that he did not make a knowing and intelligent waiver of rights because he is young and not well educated. This argument is without merit. The record reveals that the appellant is 23 years old and that he finished the eleventh grade in high school.
Although the appellant's age and intellect are factors to be considered by the trial judge in determining voluntariness, "the fact that the accused was of tender age or weak intellect will not alone render the confession inadmissible in evidence as involuntary". Arnold v. State, 348 So.2d 1092
(Ala.Crim.App.), cert. denied, 348 So.2d 1097 (Ala. 1977) and cases cited therein. We are of the opinion that such confession was here freely and voluntarily made *Page 1193 
and that the appellant's waiver was also knowingly and intelligently given.
 C
The appellant further contends that he was coerced into making the confession by Sergeant Wright. He alleges Wright stated to appellant that he would talk to the District Attorney for the appellant since the appellant was cooperating. He argues that he then gave the statement to the police.
In this case, Sergeant Wright's alleged statement was not the equivalent of urging appellant to confess or admit guilt. This court held that a "promise to bring an accused's cooperation to the prosecutor's attention does not necessarily render a subsequent confession involuntary." Wallace v. State, 290 Ala. 201, 275 So.2d 634 (1973); Tanner v. State, 57 Ala. App. 254,327 So.2d 749 (1976); Moss v. State, 347 So.2d 569
(Ala.Crim.App. 1977); Bennett, supra; Jemison v. State,439 So.2d 786 (Ala.Crim.App. 1983).
Moreover, in United States v. Frazier, 434 F.2d 994 (5th Cir. 1970), it was held:
 "Frazier's confession was not involuntary by reason of the single fact that the F.B.I. agents told him if he cooperated with them his cooperation would be made known to the United States Attorney, that there might be some consideration given by the United States Attorney but that the agents could make no promises. Standing alone this was not sufficient to establish that appellant's in-custody statement was involuntary."
This quoted statement from Frazier has been approved and applied by this court. See Wallace, supra; Tanner, supra; Moss, supra; Bennett, supra. See also, United States v. James,495 F.2d 434 (5th Cir. 1974); United States v. Ballard,586 F.2d 1060 (5th Cir. 1978); United States v. Jimenez-Diaz,659 F.2d 562 (5th Cir. 1981). A review of the evidence reveals that such statement by Sergeant Wright, if made, would not alone render this confession involuntary on this basis.
 II
The appellant argues that the evidence presented at trial was insufficient to support the jury's verdict of guilt for robbery in the first degree.
We have carefully reviewed the record in this cause and find that the evidence elicited at trial was sufficient to sustain the jury's verdict. Hubbard v. State, 437 So.2d 657
(Ala.Crim.App. 1983); Mallory v. State, 437 So.2d 595
(Ala.Crim.App. 1983); Jones v. State, 431 So.2d 1367
(Ala.Crim.App. 1983); Sanders v. State, 423 So.2d 348
(Ala.Crim.App. 1982); Harris v. State, 398 So.2d 777
(Ala.Crim.App.), cert. denied, 398 So.2d 780 (Ala. 1981);Thatch v. State, 397 So.2d 246 (Ala.Crim.App.), cert. denied,397 So.2d 253 (Ala. 1981).
We have carefully reviewed the record in this cause and find no errors therein. The judgment of the trial court is due to be and is hereby affirmed.
AFFIRMED.
All the Judges concur.