[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 873 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 874 
Michael Eugene Thompson was indicted for the capital murder of one Maisie Gray in violation of § 13A-5-40(a)(1) and (2), Code of Alabama 1975. The jury found the appellant "guilty of capital murder" and, following a sentencing hearing, the jury recommended that the appellant "be punished by death." Following a separate sentence hearing held by the trial court, the trial judge accepted the jury's recommendation and sentenced this appellant to death.
A brief statement of the facts is set out below. A more thorough recitation of the circumstances of this cause is set forth as needed in discussing each of the issues raised on appeal.
On the night of December 10, 1984, the appellant, Thompson, proceeded to the Majik Mart in Attalla, Alabama. One Maisie Gray was the only person working at the store that night. When the appellant arrived at the store, he went into the store and bought a "Coke or a beer". He then left the store, proceeded to his car where he picked up his .22 caliber pistol and reentered the store. Appellant then forced Ms. Gray to empty the cash register. Thompson then took Ms. Gray outside the store, forced her into his car and left the area. After driving around for some time, Thompson took Ms. Gray to a well in Blount County. He then forced Ms. Gray into the well and, according to his own statement, he shot into the well several times. Thompson then left and proceeded to the home of one Shirley Franklin with *Page 875 
whom he was living at the time. Once there, he picked up some more bullets for the pistol and told Shirley to go with him. The appellant and Shirley then proceeded back to the well. The appellant shot into the well some seven or eight more times. Thompson denied this statement during trial, testifying instead that Shirley Franklin had done all the shooting into the well.
Thompson and Franklin then returned to their home. The next day Thompson took the pistol, which he and Shirley had cleaned, to another well and threw it in there. The body of Maisie Gray was discovered on January 5, 1985. The Department of Forensic Sciences was able to make a determination as to the cause of death, i.e., multiple gunshot wounds. There were seven bullet wounds in the body of the victim.
 I
The appellant contends that the trial court committed reversible error by denying his motion for a continuance made on the morning of trial.
The record reflects that, prior to the trial of this cause, indeed, prior to the completion of the jury selection process, the trial court held a hearing on the motion for continuance. Appellant was requesting the continuance in order to obtain the criminal record of Shirley Franklin. A review of the record of the hearing indicates that the State made repeated efforts to get the information for the defendant prior to trial, that they finally had Ms. Franklin brought in and questioned and, in this tape recorded interview, she admitted a prior record in Indiana and that she had served six years, eight months and twenty-one days in jail. This information was then turned over to the defendant. From the record: (R. 56-61):
 "THE COURT: Well, I'm going to put the burden on you at this time, rather than delay the trial, when the matter may not — the question that you are asking the Court at this time may not ever come up. But if you feel like that there is a possibility. Have you questioned the witness with regard to these matters?
"MR. DOBSON: No, sir, I have not.
"THE COURT: Well, why not do that first?
 "MR. DOBSON: I have heard a taped statement where she has admitted one of these convictions.
 "THE COURT: Well, why don't you question her now. Then you can impeach her with permission of this Court — well, it wouldn't be necessary — by showing that she had made prior statements to that.
"MR. DOBSON: That's correct.
 "THE COURT: I would suggest — even though she is a State's witness, she is not insulated from the defendant's lawyers.
 "MR. DOBSON: She can be impeached on her prior statement.
 "THE COURT: Gentlemen, the question may not come up. I would suggest that if you have any questions about it that you should make an effort to get any documentation on it at this time.
 "MR. McPHERSON: Judge, may we ask you to do this: would you direct the State of Alabama to make an effort to get this, because it not only has to be certified, it must be exemplified.
 "THE COURT: I don't know that that is right. I think in this case if it's a certified copy of the record. Now, there are some laws on other matters requiring it to be certified and exemplified, but as far as a record of conviction — maybe it is out of another state.
 "MR. McPHERSON: Yes, sir, it has to be exemplified.
"THE COURT: The law would speak to that.
 "MR. McPHERSON: I think we can resolve the whole problem if they would agree to stipulate that what is contained on the NCIC is correct.
 "THE COURT: Unless they know, I think they would be fools, unless they have actual knowledge of it to stipulate to any such thing.
 "MR. BURTTRAM: Judge, Mr. Dobson, and maybe Mr. McPherson, for a good many days prior to last Saturday, kept *Page 876 
telling us that they thought she had a record. I don't know how many times we asked for a printout on her, and showed it to him each time.
 "THE COURT: How about putting it in the record how many times you asked for a printout?
"MR. BURTTRAM: How many, John?
 "MR. DOBSON: How many times did I ask you or Robert?
 "MR. BURTTRAM: I'm talking about the printouts that were shown to you when you would ask and they would go down and put it in the machine?
 "MR. DOBSON: I was down there all morning Thursday.
"MR. BURTTRAM: Several times?
 "MR. DOBSON: I was down there two times, anyway, three times.
 "MR. BURTTRAM: And it would always come back from Indiana, no record. So, Mr. Dobson insisted that she had a record. I presume that maybe he got it from the defendant, the information or something. Anyway, he had belief that she had a record. I sent for her, had her brought to the office, sat her down, and she was interviewed for some hour and a half. And it was taped. In that interview, she stipulated that she did have a record in Indiana and had served what?
 "MR. DOBSON: Six years, eight months and twenty-one days.
 "MR. BURTTRAM: All right. And that is the best that we were able to produce for this man at his request in the way of a record. I thought coming from the witness—
 "THE COURT: Have you furnished them with all the information you have as far as her record is concerned?
 "MR. BURTTRAM: Absolutely. He has something that I haven't, now. He got it Saturday.
"THE COURT: All right.
 "MR. BURTTRAM: He's got everything that I have. I could swap files with him right now, Judge, and I wouldn't be any worse off or any better off.
 "THE COURT: I will reserve any further ruling with regard to that question at the time it might be raised in the trial.
 I would suggest that if you have — the first thing that I would suggest that you do is talk to the defendant — I mean, not the defendant — talk to the witness. We might be sitting here arguing about nothing. However, if it comes up, as you stated in the trial, I would suggest that after talking to her, if you have any doubts about it, that you should forthwith proceed with efforts to get whatever is there. Mr. Burttram, I know it is hard for the defendant to get those records, if such be, if there are any records.
It is clear to this court that the trial court did not prejudice this appellant in any way by refusing to grant the motion for continuance. It should be noted that a continuance in a criminal case is addressed to the sound discretion of the trial court, the exercise of which will not be disturbed on appeal unless clearly abused. McConico v. State,458 So.2d 743 (Ala.Crim.App. 1984); Pritchett v. State, 445 So.2d 984
(Ala.Crim.App. 1984); Fletcher v. State,291 Ala. 67, 277 So.2d 882 (1973). There has been no abuse of discretion shown here. See Beauregard v. State, 372 So.2d 37
(Ala.Crim.App. 1979), cert. denied, 372 So.2d 44 (Ala. 1979).
Moreover, Ms. Franklin admitted her prior criminal record during her testimony, thus completing her impeachment. See C. Gamble, McElroy's Alabama Evidence, § 145.01(17) (3rd ed. 1977). The appellant simply was not prejudiced by the trial court's refusal to grant his motion for a continuance.
 II
The appellant contends that the trial judge erred by failing to declare a mistrial during the State's cross-examination of the appellant. During cross-examination of the appellant, the State elicited information as to a prior conviction. The appellant contends that in this conviction he, Thompson, was afforded youthful offender status and such was, therefore, improper impeachment, requiring a mistrial. However, it is not clear from the record that this was, in *Page 877 
fact, a reference to a youthful offender conviction. (R. 746-747).
It should be noted initially that "[t]he grant or denial of a mistrial is a matter within the sound discretion of the trial court and will only be disturbed upon a showing of manifest abuse."Durden v. State, 394 So.2d 967 (Ala.Crim.App. 1980), cert. denied, 394 So.2d 977 (Ala. 1981); Wright v. State,421 So.2d 1324 (Ala.Crim.App. 1982); Shadle v. State, 280 Ala. 379,194 So.2d 538 (1967); Davis v. State, 457 So.2d 992
(Ala.Crim.App. 1984). "The entry of a mistrial is not lightly to be undertaken. It should be only a last resort, as in cases of otherwise ineradicable prejudice. Where error is eradicable a mistrial is too drastic and is properly denied. Chillous v.State, 405 So.2d 58 (Ala.Crim.App. 1981); Van Antwerp v.State, 358 So.2d 782 (Ala.Crim.App.), cert. denied,358 So.2d 791 (Ala. 1978); Thomas v. Ware, 44 Ala. App. 157, 204 So.2d 501 (1967)." Woods v. State, 460 So.2d 291, 296
(Ala.Crim.App. 1984).
After a hearing on this matter, held outside the presence of the jury, the trial judge immediately instructed the jury to disregard the testimony, polled the jurors and determined that they would not be affected by this testimony. (R. 748). The actions of the trial judge were prompt in this cause. The matter objected to was not so prejudicial that it could not be erased from the minds of the jury. In such a case the right to declare a mistrial is a discretionary matter. See Durden, supra; Shadle, supra. The record in this cause does not support a finding of manifest abuse. The action of the trial court cured any possible harm to this appellant. See Walker v. State, 428 So.2d 139
(Ala.Crim.App. 1982); Kendrick v. State, 444 So.2d 905 (Ala.Crim.App. 1984).
 III
The appellant contends that the trial court erred in admitting two statements made by him into evidence. He argues that the statements were not voluntarily made and, therefore, inadmissible.
The first statement complained of by the appellant was made to the Sheriff of Etowah County on January 6, 1985. Prior to admitting this statement into evidence, the trial judge held a hearing outside the presence of the jury. (R. 268-314). Sheriff McDowell of Etowah County testified that he advised the appellant of his Miranda rights and that the appellant signed a form indicating that he understood those rights. No one in his presence threatened the appellant, or offered him any hope of reward or any deal or otherwise coerced or enticed the appellant into making a statement. This statement was tape recorded and played for the trial judge. The appellant testified during the hearing that he was advised of his Miranda
rights prior to making the statement, that he signed a waiver of rights form and that he knew what he was doing when he signed the form. He testified that the Sheriff did not threaten, coerce, pressure him or offer him any reward or promise him anything to make a statement. He admitted that the tape recording was an accurate depiction of his conversation with the Sheriff. The appellant contends, however, that he was tricked into making a statement. He claims that Shirley Franklin told him that one Jackie Pope had turned him in to the police. He also claims that, prior to his talking to Sheriff McDowell, he was told by the police that they were going to arrest Shirley Franklin and that she would be tried and electrocuted unless the appellant confessed. Shirley Franklin testified that she did not tell the appellant that Jackie Pope had turned him in to the police.
"The State must show both a voluntariness and aMiranda predicate in order for a statement to be deemed admissible." Thomas v. State, 373 So.2d 1149 (Ala.Crim.App.), aff'd, 373 So.2d 1167 (Ala. 1979). The prosecution brought forth testimony which properly showed that the appellant was advised of his Miranda rights, that he had not been threatened, intimidated, coerced or promised any reward for making a statement, or that he was otherwise induced, and that he freely and voluntarily waived his rights. "It is the province of the trial judge to first determine the voluntariness of a statement in a voir dire examination *Page 878 
outside the presence of the jury and, unless there is clear abuse, this discretion will not be overturned." Duncan v. State, 278 Ala. 145, 176 So.2d 840
(1965); Shewey v. State, 48 Ala. App. 730, 267 So.2d 520 (1972);Bills v. State, 49 Ala. App. 726, 275 So.2d 706 (1973);Crozier v. State, 465 So.2d 1190 (Ala.Crim.App. 1984).
When the evidence on the circumstances surrounding the appellant's confession is conflicting on voir dire, the trial judge must determine its admissibility. If admitted, then the controverted testimony for the appellant goes to the jury on the confession's credibility. Where the trial judge finds conflicting evidence that the confession was voluntarily made, its finding will not be disturbed on appeal unless found to be manifestly contrary to the great weight of the evidence. Harris v. State,420 So.2d 812 (Ala.Crim.App. 1982); Myers v. State, 401 So.2d 288
(Ala.Crim.App. 1981); Balentine v. State,339 So.2d 1063 (Ala.Crim.App.), cert. denied, 339 So.2d 1070 (Ala. 1976).
This court has held that, where the testimony of the officer shows that the appellant was read his rights, stated that he understood those rights and that he was not being threatened, coerced nor promised anything to secure this statement, indicated that he wanted to talk and made a recorded statement, this testimony was sufficient to sustain a finding that the appellant's statement was voluntary, even though the defendant contended otherwise. See Sales v. State, 432 So.2d 560 (Ala.Crim.App. 1983).
A review of the record in this matter supports the trial judge's decision to admit the statement of this appellant. Such was proper. The statement made to Blount County authorities on January 7, 1985, is likewise admissible. Officer Fowler testified outside the presence of the jury that he read the appellant his Miranda rights, that appellant stated that he understood those rights, that the appellant signed a waiver of rights form and made a statement to Fowler. Fowler further stated that the appellant was not threatened, coerced or otherwise induced into making a statement. He stated that no promises were made to the appellant, nor was there any offer of or hope of reward made to appellant. The appellant testified that Fowler did read him his Miranda rights and that he signed a waiver of rights form. However, he denied making any statement to Fowler other than "that he did not do the shooting."
As stated above, the question of whether a statement is made voluntarily is one of law and should be determined by the trial judge. Hale v. State,420 So.2d 821 (Ala.Crim.App. 1982). "Even where there is credible testimony to the contrary, if the evidence is fairly capable of supporting the inference that the rules of freedom and voluntariness were observed, the ruling of the trial judge need only be supported by substantial evidence and not to a moral certainty." Bennett v. State, 409 So.2d 936 (Ala.Crim.App. 1981), cert. denied, 409 So.2d 936 (Ala. 1982); Sniderv. State, 422 So.2d 807 (Ala.Crim.App. 1982); McNair v.State, 50 Ala. App. 465, 280 So.2d 171 (1973).
It is clear from a review of the transcript that the trial judge correctly allowed the statements of the appellant into evidence as being understandingly and voluntarily made. Once the statements were admitted into evidence, "the jury may consider the circumstances in which the confession was obtained and the way by which it was elicited in determining the credibility of the evidence and the weight to which it is given in reaching their decision."Snider, supra; Lewis v. State, 295 Ala. 350, 329 So.2d 599
(1976).
 IV
The appellant contends that the trial court erred by improperly limiting his cross-examination of Shirley Franklin.
"Trial judges have unlimited discretion to cut off questions on cross-examination which are repetitious, concern wholly collateral matters, are irrelevant, or are harassing, annoying, or humiliating." Atwell v. State, 354 So.2d 30, 39
(Ala.Crim.App. 1977), cert. denied, 354 So.2d 39 (Ala. 1978); Tombrellov. State, 421 So.2d 1319 (Ala.Crim.App. 1982); *Page 879 Webb v. State, 455 So.2d 223 (Ala.Crim.App. 1984). Such a determination by the trial court will not be reversed by this court unless the record reveals a clear abuse of discretion by the trial court. Coburn v. State, 424 So.2d 665
(Ala.Crim.App. 1982); Maund v. State, 361 So.2d 1144
(Ala.Crim.App. 1978); Turner v. State, 48 Ala. App. 754, 265 So.2d 885
(1972).
"The trial judge is vested with discretion in the conduct of a trial, and the appellate courts will not interfere unless there has been an abuse of discretion. The trial judge has a duty to move the testimony expediously along. Shelton v. State, 384 So.2d 869
(Ala.Cr.App.), cert. denied, 384 So.2d 871 (Ala. 1980)."Tombrello, supra at 1322; Turner v. State, 473 So.2d 639
(Ala.Crim.App. 1985). "Furthermore, on appeal the party claiming an abuse of the trial judge's discretion bears the burden of persuasion. Hembree, supra; Connell v. State, 294 Ala. 477,318 So.2d 710 (1974); Alford v. State, 30 Ala. App. 590,10 So.2d 370 (1942)." Turner, supra at 642.
An examination of the record clearly shows that no reversible error was committed by the trial court as argued by defense counsel. He argues that the trial court prohibited him from making full objections to the court (R. 388-390), that the trial court inferred that his questions were improper and the examination too long (R. 414); that the trial court limited his right to speak to the court and that the trial court interrupted without prior objection by the State. (R. 405, 409).
After careful examination of the record, we can find no objectionable behavior by the trial judge. In no instance did he place any restrictions on defense counsel's right to a thorough and sifting cross-examination. The instances complained of by the appellant were certainly not restrictive of his rights. On page 388-390 of the record, he was allowed to make his full objection to the court, then asked to sit down after he kept discussing the matter. The trial court finally quieted defense counsel after several pages of argument in the record. He complains that on page 405 of the record the court interrupted without advance objection by the State. Defense counsel was trying to elicit repetitious information in this instance. Wright v. State,49 Ala. App. 539, 274 So.2d 95 (1973). Certainly this is not objectionable behavior for the trial court. He argues that the trial court again interrupted without prior objection by the State on page 414. An examination of this instance reveals that the State had objected on page 413, that argument was going on between the court and the attorneys for both sides which this "interruption" was a part of. Again, appellant's argument is wholly without merit, as it is with the other instances complained of in brief on this point. The trial judge imposed no restrictions whatsoever on defense counsel and his cross-examination of Shirley Franklin which would amount to an abuse of discretion. Wright, supra and authorities cited.
 V
The appellant contends that the conduct of the trial court throughout the trial prejudiced the jury against the appellant and, therefore, reversible error occurred.
An examination of the entire record reveals that the bulk of this appellant's objections were sustained by the trial court. It is equally clear that the trial judge did not single out the defense attorneys in his conduct of the trial. The record indicates that the trial judge treated both sides fairly although he did seem to admonish each side a number of times.
The determination of the prejudicial character of improper conduct and comments of a trial judge in most cases depends on the issues, parties, and general circumstances of each case. While a particular remark by the trial judge may be open to question, in order for it to amount to grossly improper error requiring reversal, it must have influenced the result of the case. McCovery v. State,365 So.2d 358 (Ala.Crim.App. 1978); Lokos v. State, 434 So.2d 818
(Ala.Crim.App. 1982), aff'd, 434 So.2d 831 (Ala. 1983);Oglen v. State, 440 So.2d 1172 (Ala.Crim.App.), cert. denied,440 So.2d 1177 (Ala. 1983); Smith v. State, 447 So.2d 1327
(Ala.Crim.App. 1983), aff'd, 447 So.2d 1334 (Ala. 1983). *Page 880 
This court has held that the trial court which, when witnesses were being examined, made statements to the effect that it had other cases to try, that the attorneys didn't have time to keep coming up to the bench, and that they should move on as fast as possible, was acting with absolute impartiality in its remarks and such remarks were not prejudicial.Warren v. State, 382 So.2d 636 (Ala.Crim.App. 1980). See alsoHinkle v. State, 50 Ala. App. 215, 278 So.2d 218 (1973).
The trial judge's admonitions to counsel and his overall conduct of the trial was not prejudicial to the defendant and did not transcend his authority on any duty resting upon him. An examination of the entire record fails to show that the trial judge abused his authority. See Smith, supra; Sprinkle v. State,368 So.2d 554 (Ala.Crim.App. 1978), writ quashed, 368 So.2d 565
(Ala. 1979).
Moreover, the trial judge gave cautionary instructions to the jury not to allow his conduct to affect their verdict. Such action is sufficient to purge the taint of any prejudice that his actions might have caused. Oglen, supra.
 VI
Appellant argues that the pre-sentence report was inadmissible at the sentence hearing. He cites a number of reasons as to why the report should not have been considered by the trial court. Among these reasons are that the report included hearsay, that the summary of the crime was prejudicial, that he was prejudiced by the inclusion of a statement made by him to the probation officer, that the criminal history section was prejudicial, and that he did not have adequate notice of the report to refute the allegations contained therein.
It is clear to this court that the report is entirely consistent with Alabama's capital murder statute regarding evidence to be considered in sentencing. Section 13A-5-45(d), Code states, "[a]ny evidence which has probative value and is relevant to sentence shall be received at the sentence hearing regardless of its admissibility under the exclusionary rules of evidence, provided the defendant is accorded a fair opportunity to rebut any hearsay statements." Further, the report itself is an out-of-court statement and is entirely hearsay. However, it is admissible under § 13A-5-47 Code of Alabama, being specifically called for consideration by the trial court.
It is equally clear to this court that the summary of the offense contained in the pre-sentence report was not prejudicial to this appellant. He argues that this summary contained an opinion as to his culpability in the crime in question. This argument is without merit. The appellant's culpability was established by the jury's verdict of guilt. Further, the summary of the offense is consistent with the evidence presented by the State and with the appellant's own statement which was admitted into evidence at trial. The appellant was not prejudiced by this information.
The argument by the appellant that he was prejudiced by the inclusion of a statement made by him to the probation officer when it was not shown that such statement was voluntary or preceded byMiranda warnings is likewise without merit. The statement is entirely consistent with, and identical to, the appellant's own testimony at the guilt phase of the trial and during the sentence hearing.
The appellant contends that the inclusion in the pre-sentence reports' criminal history section of charges that had not resulted in convictions was reversible error. However, Rule 3(b)(2), Alabama Temporary Rules of Criminal Procedure, specifies that the pre-sentence report may contain the "defendant's prior criminal and juvenile record, if any." It is clear that the inclusion of charges that did not result in convictions is proper because the Rule allows for juvenile charges to be included. It is well settled that juvenile charges, even those that result in an adjudication of guilt, are not convictions and may not be used to enhance punishment. See Baldwin v. State, 456 So.2d 117, 125
(Ala.Crim.App. 1983), aff'd, 456 So.2d 129 (Ala. 1984), aff'd,472 U.S. 372, 105 S.Ct. 2727, 86 L.Ed.2d 300 (1985). The inclusion of the charges in no way prejudiced the appellant. The trial *Page 881 
judge did consider some of the charges listed, but only those which had resulted in convictions. (CR. 16).
The appellant's argument that he was afforded insufficient notice of the pre-sentence report is without merit. A review of the record and proceedings reveals that defense counsel received a copy of the report at least one day prior to the trial judge's sentence hearing. A further review of the proceedings indicates that the appellant did not deny any of the assertions contained within the report. The appellant was not prejudiced by the one day notice.
 VII
The appellant contends that the trial court erred in its findings or lack of findings of mitigating circumstances.
Appellant first contends that the trial court erred in failing to find that he had no significant history of prior criminal activity. A review of the pre-sentence report reveals that the appellant had some fourteen prior misdemeanor convictions. Such are sufficient to negate this mitigating circumstance. See Jackson v. State, 459 So.2d 963
(Ala.Crim.App.), aff'd, 459 So.2d 969 (Ala. 1984), cert. denied,470 U.S. 1034, 105 S.Ct. 1413, 84 L.Ed.2d 796 (1985); Murry v.State, 455 So.2d 53 (Ala.Crim.App. 1983), rev'd on other grounds, 455 So.2d 72 (Ala. 1984).
Appellant further argues that the trial court erred in considering, in regard to the finding that this mitigating circumstance did not exist, the appellant's admission to a jailor that he had committed other armed robberies. It should be noted that the trial court also noted that the appellant had not been convicted of any prior felony offenses. Based on the finding of the other offenses which were more than sufficient to negate this circumstance, we fail to see how this has harmed this appellant. This court has held on at least one prior occasion that the inclusion of an improper aggravating circumstance should be considered harmless error. Indeed, the Supreme Court of the United States reached this very result inBarclay v. Florida, 463 U.S. 939, 103 S.Ct. 3418,77 L.Ed.2d 1134 (1983). Since the mitigating circumstance would have been negated even without consideration of this information, it is clear that its inclusion was harmless.
Appellant argues that the trial court erred in refusing to find as a mitigating circumstance that his capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law was substantially impaired. The trial court based his decision on two reasons: (1) Any impairment was due to voluntary intoxication by alcohol or drugs; and (2) since the commission of the offense the appellant has been able to clearly relate the material events of the offense. (CR. 17). Furthermore, as pointed out by the trial judge, a number of psychiatrists have examined this appellant and there was no finding that the appellant was suffering from any mental disturbance of such severity to compromise his ability to appreciate the criminality of his conduct or to conform his behavior to the requirements of the law on the occasion of the commission of the offense at issue. We agree with the trial court that voluntary intoxication will not constitute grounds for the mitigating circumstance in this cause. The appellant simply did not show that he was so intoxicated as to have rendered himself incapable of appreciating his conduct. Even if he had shown this, intoxication is no defense to the crime in question. The trial judge was correct in his holding.[1]
The appellant contends that his age should have been considered a mitigating circumstance. This appellant was 25 years of age at the time of the crime. The refusal to find this age to be a mitigating factor was proper. See Ex parte Lindsey,456 So.2d 393 (Ala. 1984), cert. denied, 470 U.S. 1023, 105 S.Ct. 1384,84 L.Ed.2d 403 (1985); Tomlin v. State [Ms. 1 Div. 23, Nov. 14, 1985] (Ala.Crim.App. 1985).
The appellant argues that the trial court erred in refusing to find as a nonstatutory mitigating circumstance the appellant's history of drug and alcohol abuse. *Page 882 
The trial court considered all evidence presented by the appellant. The fact that he refused to find as a mitigating circumstance the voluntary drug and alcohol abuse does not create reversible error. The trial judge simply did not view this behavior, as well as his unstable life, as a mitigating factor. It was within his discretion to so find. SeeCochran v. State 500 So.2d 1161 (Ala.Crim.App. 1984), rev'd on other grounds, 500 So.2d 1179 (Ala. 1985); Dobbert v.Strickland, 718 F.2d 1518 (11th Cir. 1983); Moore v.Balkcom, 716 F.2d 1511 (11th Cir. 1983). This decision is not error.
 VIII
As required by § 13A-5-53(a), Code of Alabama 1975, this court must review the propriety of the imposition of the death penalty in this case. Our review must include a determination of the following questions:
 (1) Was any error adversely affecting the rights of the defendant made in the sentence proceedings?
 (2) Were the trial court's findings concerning the aggravating and mitigating circumstances supported by the evidence?
(3) Was death the proper sentence in this case?
As to the first question, we have reviewed the sentence proceedings and have found no error adversely affecting the appellant's rights. We are also satisfied that the trial court's written findings concerning the aggravating and mitigating circumstances are fully supported by the evidence. See Appendix A.
To answer the question of whether the death penalty was properly imposed in this case, we must determine:
 (1) Whether the sentence of death was imposed under the influence of passion, prejudice, or other arbitrary factor;
 (2) Whether an independent weighing of the aggravating and mitigating circumstances at the appellate level indicates that death was the proper sentence; and
 (3) Whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant.
Alabama Code § 13A-5-53(b) (1975); See also Beck v. State,396 So.2d 645 (Ala. 1981).
There is nothing in the record before us which even intimates that the death penalty was imposed under the influence of passion, prejudice, or other arbitrary factor.
Our independent weighing of the aggravating and mitigating circumstances leaves us with no doubt that the death penalty was appropriate in this case. The mitigating circumstances did not outweigh the aggravating circumstances. Our review of this cause reveals the following aggravating circumstances: (1) the defendant committed this crime while engaged in or was an accomplice in the commission of, or attempt to commit, or flight after committing, or attempting to commit, rape, robbery, burglary, or kidnapping, § 13A-5-49(4), Code of Alabama 1975; and (2) that the offense was especially heinous, atrocious or cruel, § 13A-5-49(8), Code of Alabama 1975. When the circumstances surrounding the victim's death are considered, it becomes apparent that the eighth aggravating circumstance was present. The appellant forced the victim into a well, shot into the well a number of times, i.e., possibly as many as 15, and left the victim in the well. The victim at that time was either dead or wounded. The appellant then came back to the well a short while later and shot into the well some seven more times. The death of the victim in this cause was, in fact, unnecessarily torturous and exhibited a consciousless or pitiless action on the part of this appellant.
In regard to the final determination we must make, we find that the death penalty imposed on the appellant is not excessive or disproportionate to the penalty imposed in similar cases. See e.g., Baldwin v. State, 456 So.2d 117
(Ala.Crim.App. 1983), aff'd, 456 So.2d 129 (Ala. 1984), cert. granted, *Page 883 
469 U.S. 1085, 105 S.Ct. 589, 83 L.Ed.2d 699 (1984); Coulter v.State, 438 So.2d 336 (Ala.Crim.App. 1982), aff'd,438 So.2d 352 (Ala. 1983); Raines v. State, 429 So.2d 1104
(Ala.Crim.App.), aff'd, 429 So.2d 1111 (Ala. 1982).
We have searched the record as required by Rule 45A, A.R.A.P., and have found no error which adversely affected the rights of the defendant. The sentence of death was proper in this case. Therefore, the judgment of the trial court is due to be and is, hereby, affirmed.
Affirmed.
All the Judges concur.
 APPENDIX A
This being the date heretofore set for hearing on sentence to be imposed upon the defendant by this Court. The defendant was present in open Court represented by his counsel, the Honorable B.J. McPherson and the Honorable John Dobson. The State of Alabama being represented by Deputy District Attorney of Blount County, the Honorable Jack Bains. This Court advised counsel that the State of Alabama and the defendant would be permitted to offer any evidence concerning the aggravating and mitigating circumstances to be considered by this Court in determining the sentence of the defendant and announced that the arguments and presentation of evidence would proceed as provided under Title13A-5-47 of 1975 Code of Alabama. The State of Alabama thereafter advised the Court that the State was relying on aggravating circumstances as follows:
(1) The capital offense was committed while the defendant was engaged or was an accomplice in the commission of, or an attempt to commit, or flight after committing, or attempting to commit rape, robbery, burglary or kidnapping.
(2) The capital offense was committed for the purpose of avoiding or preventing a lawful arrest or effecting an escape from custody.
(3) The capital offense was committed for pecuniary gain.
(4) The capital offense was especially heinous, atrocious or cruel compared to other capital offenses.
The District Attorney then offered in support of said aggravating circumstances the transcript of all testimony offered at the trial of said cause and in addition thereto any and all testimony offered at the sentence phase of the hearing held before the jury.
The defendant was then given an opportunity to offer any testimony or evidence concerning any mitigating circumstances. This Court did place in the record a copy of the written presentence investigation report prepared by the Probation Officer, a copy of which had previously been furnished to the defendant and/or his counsel.
In support of mitigating circumstances, the defendant called as a witness, William D. Hurst, Jailor of the Blount County Jail. Witness Hurst testified with regard to the repentant attitude of the defendant and to the fact that the defendant had been most cooperative and in effect, a model prisoner since being incarcerated in the jail. There was also introduced a poem which has been composed by the defendant which also expressed the defendant's repentance. The witness also related certain voluntary statements that had been made to him by the defendant concerning other armed robberies committed by him prior to this offense. Thereafter, the defendant, Michael Eugene Thompson, was called to testify in his own behalf. Defendant stated that he did not intend to call any other members of his family to testify in his behalf due to the fact that he did not wish to cause them any additional suffering over this case. The defendant related his age to be twenty-five years. The defendant also testified as to the difficulties of his early life, being brought up in a poor family and also to the fact that his father was killed by gunshot when he was sixteen years of age and that he had harbored some guilt feelings over the events surrounding his father's death. The defendant testified as he did at the trial of his long time use of alcohol and drugs. *Page 884 
At the conclusion of the testimony, counsel for the State of Alabama and both counsels for the defendant were allowed to make closing arguments concerning aggravating and mitigating circumstances and imposition of sentence.
At the conclusion of arguments, the defendant was called before the bench in the presence of his counsel. This Court stated to the defendant that the jury had heretofore found the defendant guilty of the capital offense as set out in count one of the indictment and that now this Court does hereby find the defendant guilty of the capital offense as set out in count one of the indictment and asked the defendant if he had anything to state to this Court before the imposition of sentence. The defendant stated as follows:
"I would like to say that I have done a lot of wrong in my life, I know I have, and alcohol and drugs is what caused it, but I didn't shoot that woman, I didn't shoot her. I robbed the store and I know I need to pay for what I've done, but I didn't kill that woman. That's all I've got to say."
 SUMMARY OF FACTS
This Court finds that on the night of December 10, 1984, that the defendant, Michael Eugene Thompson while armed with a .22 caliber pistol did proceed to the Majik Mart in Attalla, Alabama in which the victim Maisie Gray was employed. Maisie Gray being the only employee present at that time. The defendant at gun point, robbed the Majik Mart by emptying the cash register. The defendant then forced the victim Maisie Gray to leave in his company with the victim driving his automobile. The victim remained in the company of the defendant for quite some time, possibly several hours. The defendant some time during the night, possibly in the early morning hours of the next morning, carried the victim to a well in Blount County. According to the defendant's own statements, he kicked or pushed the victim into the well and according to his statement, he proceeded to shoot into the well several times and then left and proceeded to the home where he was staying with his girl friend. He there, secured additional ammunition for his pistol and persuaded his girl friend to go with him back to the well. The defendant then shot into the well numerous other times, possibly twelve or fifteen times. The defendant, when he testified in said cause, recanted the statement previously made to the Sheriff and, stated on the witness stand that the shots that were fired into the well were done by his girl friend.
Thereafter, the defendant and his girl friend returned to her home and the next day the defendant took the pistol, put in a plastic bag and threw same into another well at a different location. The body of the victim remained in the well until the 5th day of January, 1985, at which time it was discovered and was recovered on the 6th day of January in a decomposed state. As result of the statement made by the defendant, the pistol used in the shooting was recovered from the other well. It was later determined and testified to by officials from the Department of Forensic Science that the cause of death of the victim was gunshot wounds.
This Court has considered all of the relevant testimony relating to aggravating circumstances as set out in Title13A-5-49 of the Code of Alabama and all of the mitigating circumstances as set out in Title 13A-5-51 of the Code of Alabama and has also considered all matters of mitigation in addition to those enumerated in 13A-5-51.
 AGGRAVATING CIRCUMSTANCES
Even though the State of Alabama in their presentation said that they were relying on the aggravating circumstances that the capital offense was committed for the purpose of avoiding a lawful arrest, or perfecting an escape therefrom, (13A-5-49) (5) and also the capital offense was committed for pecuniary gain (13A-5-49) (6), the Court finds that these two aggravating circumstances would not apply to the facts of this case. The Court also finds that there was no evidence that would support the finding of aggravating circumstances under 13A-5-49
Subsections 1, 2, 3 and 7. (1) That the capital offense was committed by *Page 885 
a person under sentence of imprisonment. (2) The defendant was previously convicted of another capital felony or a felony involving the use or threat of violence to the person. (3) The defendant knowingly created a great risk of death to many persons. (7) The capital offense was committed to disrupt or hinder the lawful exercise of any governmental function or the enforcement of laws.
This Court, herein has enumerated the facts surrounding the commission of the offense, and the facts are undisputed that the defendant, on the night of December 10, 1984, robbed the Majik Mart and kidnapped the victim Maisie Gray and that the victim was later murdered. Therefore, this Court does find as an aggravating circumstances that the capital offense was committed while the defendant was engaged or was an accomplice in the commission of, or an attempt to commit, or flight after committing, or attempting to commit, rape, robbery, burglary or kidnapping.
This Court has also in the finding of facts enumerated the circumstances surrounding the death of the victim. This Court is cognizant of the fact that in order to find an aggravating circumstances as being especially heinous, atrocious or cruel compared to other capital offenses that the circumstances surrounding the death must be in the nature of tortuous, consciousless or pitiless. The victim Maisie Gray some time after having been kidnapped, was placed in the trunk of defendant's automobile and remained in the trunk of the automobile possibly for several hours while the defendant contemplated what to do with the victim. The victim was shoved into the well in the dead of night and if she had not been shot and was left to remain in the well would have no doubt died from that fact alone. However, after shooting into the well, the defendant was not able to continue shooting due to the fact that his ammunition was gone. The victim was left in the well, at that time either dead or wounded, while the defendant went to his home for the purpose of acquiring additional ammunition and upon returning, shot into the well an additional twelve to fifteen times and the victim's death was caused by gun shot wounds inflicted by the defendant either at the first or later occasion or both. Considering all of the evidence and circumstances surrounding the victim's death, this Court finds that the death of the victim was consciousless or a pitiless homicide which was unnecessarily tortuous to the victim. It is therefore the finding of this Court that the capital offense was especially heinous, atrocious or cruel compared to other offenses.
 MITIGATING CIRCUMSTANCES
This Court has considered all of the mitigating circumstances as enumerated in Title 13A-5-51 and this Court finds no evidence that would justify a finding of any of the enumerated mitigating circumstances.
The defendant specifically relied on the mitigating circumstances that the defendant had no significant history of prior criminal activity. This Court disagrees. The Court realizes that the defendant's record does not contain a significant history of felony convictions, however, during the period of time from August, 1977 to May, 1984, the defendant was convicted of nineteen misdemeanors and one youthful offender offense for which he was sentenced to three years and three years probation. Some of the offenses even though misdemeanors, involved crimes of moral turpitude. The defendant also made a voluntary statement to the Jailor while incarcerated on this offense, that he had committed other armed robberies.
This Court does not find that the capital offense was committed while the defendant was under the influence of extreme mental or emotional disturbance.
This Court does not find the capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired.
With regard to the two previously stated mitigating circumstances, the only evidence offered by the defendant was the defendant's own statement that on the night of the commission of the offense that he claimed that he had been taking drugs and alcohol. However, any use of drugs or *Page 886 
alcohol on this occasion was voluntary and at all times since the commission of the capital offense the defendant has been able to clearly relate and recall the material events that occurred prior to, during and after the commission of the capital offense.
The defendant was also examined by psychiatrists from Bryce Hospital and later examined by an independent psychiatrist selected by the defendant and/or his attorneys. In all the reports submitted by the psychiatrists for the information of this Court, there was no finding that the defendant was suffering from any mental disturbance of such severity to compromise his ability to appreciate the criminality of his behavior or to conform his behavior to the requirements of law on the occasion of the commission of the capital offense.
This Court does not find that the victim was a participant in the defendant's conduct or consented to it.
The Court does not find that the defendant was an accomplice in the capital offense committed by another person and his participation was relatively minor. According to the facts summarized above, it is clear in this Court's mind that the defendant's participation was certainly not minor.
This Court does not find that the defendant acted under extreme duress or under the substantial domination of another person.
The defendant has specifically relied on one of the mitigating circumstances as the age of the defendant. The defendant is a white male, twenty-five years of age, well developed mentally and physically, with no apparent impairments. The defendant testified in his own behalf. The defendant appears to have matured to his age level and has at least average intelligence. This Court therefore does not find the age of the defendant as a mitigating circumstances.
At the sentence stage hearing before this Court, the defendant has exhibited a repentent attitude and at this stage of the proceedings was certainly concerned over the suffering that had been imposed on the victim and the members of the victim's family and also to the members of his own family. This Court does therefore consider this to be a mitigating circumstances.
This Court having considered all of the statutory mitigating circumstances, and any additional mitigating evidence offered by the defendant, and after consideration of all of the matters that were presented to the Court during any of the hearings both in mitigation and aggravation, and taking into consideration all the other matters that were properly before the Court as hereinabove stated, this Court now does find and is convinced, beyond a reasonable doubt and to a moral certainty that the aggravating circumstances as shown above and brought before this Court outweigh any mitigating circumstances as shown above and that the aggravating circumstances are sufficient to uphold the jury's finding of punishment at death.
It is therefore the judgment of this Court, that the recommendation by the jury, that the defendant be punished by death is accepted by this Court. This Court has heretofore this date in open Court, found the defendant guilty and sentenced the defendant to death.
Therefore, be it ORDERED, ADJUDGED and DECREED by this Court, that the defendant, Michael Eugene Thompson, at a date to be determined by the Appellate Court hereafter, within the walls of William C. Holman Prison at Atmore, Alabama or such other place that might be hereafter designated by the laws of this State, and in the manner and method as provided in Title15-18-82 Code of Alabama, 1975, that the defendant shall suffer the penalty of death and that his death shall be caused by a current of electricity passing through his body of sufficient intensity to cause death and the application and continuance of such current through defendant's body shall continue until death does in fact occur therefrom.
The defendant was advised that he is entitled to an automatic appeal. The defendant *Page 887 
having herefore been determined an indigent, be it ORDERED that the Honorable B.J. McPherson and the Honorable John Dobson be and are hereby appointed attorneys for the defendant on appeal.
Be it further ORDERED that the defendant be placed in custody of the Sheriff of Blount County and that the Sheriff be directed to transfer the defendant to the custody of the Warden of Holman Prison. The defendant shall remain in the custody of the Warden of Holman Prison until such time as the sentence of this Court is carried out or subject to further orders of this Court.
Defendant's attorneys in open Court, gave notice of appeal. Be it ORDERED that the defendant be held without bond pending appeal.
This the 11th day of June 1985.
 /s/ H.E. Holladay Judge
[1] See trial court's order hereto attached and made a part hereof as Appendix A.