318 So.2d 710

**In re Ronald Keith CONNELL**

**v.**

**STATE of Alabama.**

**Ex parte STATE of Alabama ex rel. ATTORNEY GENERAL.**

**SC 899.**

Supreme Court of Alabama.

Nov. 14, 1974.

Rehearing Denied Jan. 23, 1975.

William J. Baxley, Atty. Gen. and Kermitt M. Downs, Asst. Atty. Gen., for the State, petitioner.

Walker, Hill, Gullage, Adams & Umbach, Opelika, for respondent.

HARWOOD, Justice.

We granted the State's petition for a writ of certiorari in order to review the judgment of the Court of Criminal Appeals which reversed the judgment of the lower court finding this petitioner guilty of murder in the first degree. The sole basis for the reversal of the judgment is set out below. We are not in accord with the conclusions and judgment of the Court of Criminal Appeals reversing the judgment of the lower court.

The facts surrounding the murder of Burt Michael Froney by this petitioner and his three accomplices have been set out in detail in the opinion of the Court of Criminal Appeals and we will not again detail these facts except as they may bear upon the conclusions we have reached.

Suffice to say that the deceased and his wife, traveling in a camper, in a spirit of charity, picked up the appellant and his three hitchhiking companions. Every hospitality was offered the quartet by the Froneys, even to the extent of proceeding beyond their destination in order to take the hitchhikers into Montgomery. On this extension of the trip, the Froneys' good will was rewarded by the quartet murdering

Mr. Froney and attempting to murder Mrs. Froney. The facts as shown in the opinion of the Court of Criminal Appeals discloses a heinous, vicious, and premeditated murder. Mrs. Froney was stabbed seven times, an attempt was made to suffocate her, and the camper was set afire in an apparent effort to destroy the evidence of the crime. The appellant and his accomplices were later apprehended in California with certain belongings of the Froneys' in their possession.

Despite the murderous assault on her, Mrs. Froney, after the quartet had fled the scene of their atrocity, was able to leave the camper and make her way to a highway where fortunately she was discovered by a patrolling State Trooper.

She was taken to a hospital where she was interviewed within two days by law enforcement officers.

No evidence was offered by the defense other than that of several witnesses whose testimony was directed solely toward supporting appellant's plea of not guilty by reason of insanity. The trial judge in his instructions to the jury, charged the jury that there was no evidence tending to support the plea of not guilty by reason of insanity, and the Court of Criminal Appeals approved of this action. Therefore, the only material question remaining is that of appellant's guilt in participating in the murder. The appellant offered no evidence contradictory of the evidence offered by the state in this regard, and the evidence offered by the state was overwhelming in its tendencies establishing the appellant's guilt.

■ The only question presented for our review on this certiorari is the action of the Court of Criminal Appeals in reversing the judgment of the lower court because of that court's refusal to permit counsel for the appellant to cross-examine Mrs. Froney, the only eye witness to the murder of her husband, relative to a transcript made of an interview between Mrs. Froney and investigating officers, the interview taking place a day or so after the murder, and while Mrs. Froney was in the hospital. This transcript had never been signed, nor ever seen by Mrs. Froney.

It is clear from the record that Mrs. Froney had not used any notes or memoranda of any kind during her direct examination.

It was undisputed that such interview was had. We have therefore gone to the record for a more complete understanding of this matter as treated in the opinion of the Court of Criminal Appeals. *Wilbanks v. State,* 289 Ala. 171, 266 So.2d 632.

In its treatment of the matter, the Court of Criminal Appeals has set out "a stipulation of the parties and a colloquy between counsel for the defendant, Mr. Walker, the District Attorney and the trial court * * *" No clear picture of the entire record in regard to the court's ruling comes through from this recitation, and as before stated, we have gone to the record for a fuller understanding of the situation.

As to the interview the investigating officers had with her in the hospital, and the transcript made by the officers following such interview, Mrs. Froney testified on voir dire examination as follows:

"BY MR. WRIGHT:

"Q Mrs. Froney, did—I'd like to show you a paper here, or at least a memorandum of some 34 pages long and ask you, did you make this memorandum here?

"A No, I didn't make it myself.

"Q Did you sign it in any way?

"A Not signed by me.

"Q Have you ever seen—did you ever read it over or see it before now?

"A No, I don't know anything about it.

"Q Did you see me with it in my hands here last week in the trials of—

"A I saw it there with all the other paper work.

"Q   Did you give any kind of written statement to the officers there, or at any time?

"A   No, I don't believe I ever did.

"MR. WALKER: Well, let me ask her this on voir dire, too. Mrs. Froney, you do recall that you gave an oral statement to Captain Herman Chapman and Sheriff Jim Pearson of Lee County and to perhaps some other officers at the East Tallapoosa County Hospital?

"THE WITNESS: I do recall they came in and they asked me questions.

"THE COURT: When was that?

"THE WITNESS: That was—I'm not sure what day it was. It was possibly a day or so after I had been put in the hospital.

"THE COURT: The day after you were carried to the hospital?

"THE WITNESS: A day or so.

"MR. WALKER: 'A day or so,' she said.

"THE COURT: A day or so after the occurrence?

"THE WITNESS: Yes, sir.

"THE COURT: How long did you stay in the hospital?

"THE WITNESS: I was in there about one week.

"MR. WRIGHT: Could I ask her one other question?

"Q   Was it on January 27th when the officers—the afternoon of January 27th when the officers came to talk to you at the hospital, or do you recall?

"A   I know it was just a day or so later, which would make it the 27th or 28th.

"Q   All right. You, of course, were still in the hospital at that time?

"A   Yes, I was.

"Q   You were still under sedation, were you not?

"A   Very much so.

"THE COURT: Under sedation?

"Q   State whether or not when the officers talked with you, they would talk with you awhile and then the nurse would ask them to leave.

"A   Yes, I couldn't really talk for any length of time. And so the doctor and the nurse were there and they would have them to leave for a period of time, and then we would resume again and we'd get stopped again, and it went on for hours.

"Q   All right. For hours?

"A   Yes."

The officers' transcription of this interview had been furnished defense counsel.

At the time defense counsel attempted to cross-examine Mrs. Froney as to this transcription, the district attorney objected to such line of questions on the ground that Mrs. Froney had never seen the transcription. The court sustained the objections of the district attorney and the record shows the following in this regard:

"MR. WRIGHT: We're going to object to Mr. Walker questioning her about a statement that she has already said she has never seen before.

"THE COURT: Sustained, and the Court cites the case of *Mabry versus State* [40 Ala.App. 129], 110 So.(2) 250; and particularly the case of *Parker versus State* [266 Ala. 63] 94 So.(2) 209. Mr. Walker, that is an unsigned statement; it was taken and she has never signed it and she has testified she has read it; she doesn't know what's in there, and the Supreme Court of Alabama says you can't impeach a witness on—

"MR. WALKER: I'm not trying to impeach her, Your Honor. There's not one thing in there contradictory in here from what she's told me. I'm just really trying to refresh her recollection from it.

"THE COURT: Well, it seems to me you're impeaching her; you're holding the statement in your hand.

"MR. WALKER: I'm showing it to her.

"THE COURT: You're showing it to her? Well, you're trying to show that she made one statement there and she's making another statement today. What is it except impeachment?

"MR. WALKER: Well, I'm trying to help her remember some of the details, Your Honor, and that's all. I'm really not trying to impeach the young lady. I don't think she's trying to withhold anything.

"THE COURT: I don't think so, either."

We agree with the lower court that the examination of Mrs. Froney in regard to the transcription would appear to be in the realm of impeachment. No proper predicate was laid for impeachment. If defense counsel's contention that he was not trying to impeach Mrs. Froney but only trying to refresh her recollection be accepted, the court was yet justified in sustaining the objection. The murder was committed on the night of 26 January 1972. Mrs. Froney was interviewed by the officers on the 27th or 28th of January 1972. Her cross-examination was on 31 May 1972, some four months later.

As stated by Judge McElroy in his outstanding work on "Law of Evidence in Alabama," Vol. 1, 2nd Ed., Sec. 116.02, (2), which section pertains to refreshing a witness' recollection by the use of memoranda:

"It is not required that the witness himself shall have made the writing. It may have been made by another provided the witness saw it at a time when the matter recorded in it was fresh in his mind, and he then knew the writing to be correct. Penny [Penney] v. Warren, 217 Ala. 120, 115 So. 16; United States Fidelity & Guaranty Co. v. Yeilding Bros. Dept. Store, 225 Ala. 307, 143 So. 176; Campbell v. State, 29 Ala.App. 343, 195 So. 775."

Mrs. Froney of course had not seen the transcript of the memorandum prepared by the officers after their interview, had no knowledge of the contents of the memorandum, and was confronted with the same some four months later, during her cross-examination as a witness in petitioner's trial. The court's ruling denying petitioner's attempted cross-examination for the purpose of refreshing her recollection was therefore correct.

Counsel for petitioner Connell has directed his contention of error in the ruling hereinabove considered mainly on the basis that the ruling deprived the petitioner of the right to a full and sweeping cross-examination. It is true that Section 443, Title 7, Code of Alabama 1940 provides:

"The right of cross examination thorough and sifting, belongs to every party as to the witnesses called against him. * * *"

But this statutory provision is not unlimited. It is well settled by the decisions of this court, and of our appellate courts, that the latitude and extent of cross-examination, is a matter in the sound discretion of the trial court, and in the absence of prejudicial abuse, it is not reviewable on appeal. Turner v. State, etc., 289 Ala. 97, 265 So.2d 883, and authorities cited therein; McCain v. State, 46 Ala.App. 627, 247 So.2d 383, and authorities cited therein. On appeal, the party claiming that a trial judge has abused his discretion in such aspect bears the burden of persuasion. Buckelew v. State, 48 Ala.App. 411, 265 So.2d 195; Seals v. State, 282 Ala. 586, 213 So.2d 645.

Under the totality of the facts furnishing a background for the court's ruling in the instance now under consideration, it would seem highly doubtful that the petitioner has met his burden of showing prejudice in the ruling. We need not, how-

ever, decide this point as Section 443, above referred to, cannot properly be construed as vitiating the established requirements as to refreshing a witness' memory from a memorandum, which rule we have heretofore adverted to.

It is our conclusion that the Court of Criminal Appeals erred in its conclusion that the court below erred in sustaining the state's objection to the questions seeking to refresh Mrs. Froney's memory from the transcript prepared by the investigating officers. The judgment of the Court of Criminal Appeals is therefore due to be reversed.

Reversed and remanded.

MERRILL, BLOODWORTH, MADDOX, McCALL, and FAULKNER JJ., concur.

HEFLIN, C. J., and COLEMAN, and JONES, JJ., dissent.

JONES, Justice (dissenting):

The majority opinion gives three reasons for upholding the actions of the trial Court in not allowing the defense counsel to use the transcription in the cross-examination of Mrs. Froney:

(1) The defense counsel's interrogation was designed to impeach the witness and no proper predicate for the impeachment had been laid.

(2) If defense counsel's purpose was to refresh her recollection, the requisite conditions had not been met.

(3) The admissibility vel non lay within the trial Court's discretion and this discretion was not here abused.

I respectfully disagree on all three points.

## I.

### Impeachment

I fail to understand how it could be conceivably argued that defense counsel was here attempting to impeach this witness. He made clear in his offer of proof that he hoped never to be in a position of having to impeach Mrs. Froney, who was the only eye witness to the brutal murder of her husband, and who had herself been a victim to this atrocity. This offer of proof, coupled with the substance and nature of the questions asked, reflect a trial strategy which abhorred impeachment. On direct examination, Mrs. Froney had answered, "I do not know" and "I do not remember" to several questions to which she had given definitive and potentially favorable replies when questioned by the investigating officer, and which replies the defense counsel now held in his hand by way of a transcription of the initial interview. To call this impeachment is in effect to abolish the distinction between *impeachment* on the one hand and *to refresh recollection* on the other, and that this Court has always recognized a valid distinction is too clear to warrant further discussion.

## II.

### Refreshed Recollection

The majority opinion states: "If defense counsel's contention that he was not trying to impeach Mrs. Froney but only trying to refresh her recollection be accepted, the court was yet justified in sustaining the objection."

The opinion then quotes from Judge McElroy's *Law of Evidence in Alabama*, which prescribes certain conditions as prerequisites to admissibility, and the Court concludes these prerequisites were not here met. The quote from McElroy is taken out of context and fails to recognize the distinction between *present recollection recalled* and *past recollection recorded*. *Wigmore on Evidence* (Vol. 3, Chap. 28), with which McElroy agrees, delineates the two thusly:

"At the outset an important distinction is met between that present *actual* recollection which a witness on the stand may ordinarily be expected to exhibit (called

here present recollection), and that recollection which *once existed*, but now, having irrevocably vanished, depends on artificial preservation (called here past recollection). The use of the latter sort was for a time little recognized, and is even now often confused with the use of a present recollection."

In the case of present recollection, it must be remembered that we are dealing with *primary* evidence. It is the witness's present recall, aided simply by some previously written memorandum. By the use of some previously recorded data the witness is saying, "This refreshes my recollection so that now, independent of the writing, I have a present recollection of the matter." In the second situation the witness is saying, "There was a time shortly after the incident when I did remember certain of the facts and details, but I do not now, even after looking at and reviewing what was then written down, remember of my independent recollection what occurred." In this latter case, the document itself, as *secondary* evidence, may be admissible with certain safeguards designed to insure the document's reliability, i.e., that it was either written by a particular person, or was seen being recorded by that person, or testimony as to its validity by the person who did record it. The necessity of the safeguards for reliability in the case of *secondary* evidence (past recollection recorded) does not obtain in the case of *primary* evidence (present recollection recalled).

We are here dealing with a *primary* evidence issue only. Counsel for defendant, in cross-examining Mrs. Froney, was in nowise attempting to introduce the transcription of her earlier interview. He was, instead, seeking to refresh her present recollection of the events in question. Conceivably, if the attempt to refresh her recollection had failed and if she persisted,

after reviewing her former statement, that her recollection had not been refreshed and that she continued not to remember,[1] then the *past recollection recorded* rule may have been invoked. In that event, the written statement would have been admissible as *secondary* evidence only if the conditions requisite to its introduction were properly proved. Alternatively, the witness might also have testified, when counsel sought to refresh her recollection, that she did not at the time of the interview make the statements which appeared in the transcription. In that event, counsel could have elected—with the proper predicate, of course—to impeach the witness. Neither of the latter two situations ever occurred.

This is not a new or novel distinction or one without practical or logical basis. Chief Justice Stone, in his celebrated opinion of *Acklen's Executor v. Hickman*, 63 Ala. 494 (1879), set out the rule:

"The law recognizes the right of a witness to consult memoranda in aid of his recollection, under two conditions: First, when, after examining a memorandum made by himself, or known and recognized by him as stating the facts truly, his memory is thereby so refreshed that he can testify, as matter of independent recollection, to facts pertinent to the issue. In cases of this class, the witness testifies to what he asserts are facts within his own knowledge; and the only distinquishing difference between testimony thus given, and ordinary evidence of facts, is that the witness, by invoking the assistance of the memorandum, admits that, without such assistance, his recollection of the transaction he testifies to, had become more or less obscured. In cases falling within this class, the memorandum is not thereby made evidence in the cause, and its contents are not made known to the jury, unless opposing counsel call out the same

---

1. The rule favoring admissibility under this hypothesis would likewise permit the use of the recording itself where the witness's recollection is not refreshed from the transcription.

The sound of one's own voice might refresh one's present recollection even though the written transcription did not.

484

on cross-examination. This he may do, for the purpose of testing its sufficiency to revive a faded or fading recollection, if for no other reason.

"In the second class are embraced cases in which the witness, after examining the memorandum, can not testify to an existing knowledge of the fact, independent of the memorandum. In other words, cases in which the memorandum fails to refresh and revive the recollection, and thus constitute . it present knowledge. If the evidence of knowledge proceed no further than this, neither the memorandum, nor the testimony of the witness, can go before the jury. If, however, the witness go further, and testify that, at or about the time the memorandum was made, he knew its contents, and knew them to be true, this legalizes and lets in both the testimony of the witness and the memorandum. The two are the equivalent of a present, positive statement of the witness, affirming the truth of the contents of the memorandum."

The rule of this case has never been overturned or questioned, and that its wisdom has been consistently acknowledged is reflected by two and one-half columns of citations in *Shepard's*. In fairness to the majority, it should be noted that *Acklen's* was not pointed out in briefs or oral arguments and was discovered by the author of this dissent after conference in which the vote of the court was taken.

The fallacy in rejecting the conclusion reached by the Court of Criminal Appeals is clearly focused by reversing the context in which the question arises. Suppose, for example, on direct examination Mrs. Froney was unable to recall sufficient details of the occurrence to make out a prima facie case against this defendant. Thereupon, the district attorney recalled to her mind the interview with the investigating officer which resulted in the transcription of the questions asked and her answers thereto. Suppose, further, that she re-called the interview and upon examining the transcription her present recollection was refreshed and that she testified over the objection of the defendant from her present recollection independently of,˙ although aided by, the written document. On appeal, this Court without question, and properly so, would sustain the trial Court's action in overruling the defendant's objection and affirm the conviction. To be sure, the rule should be even more liberally applied in the context of cross-examination. If the rule of law admitting this testimony under the above hypothesis is a valid one, then it must not be analogous to a one-way ticket on a railroad—good for today only.

III.

*Discretion of the Court*

The trial Court, of course, must of necessity have wide discretion in the general conduct of a trial, but to use *discretion* as a substitute for definitive, substantive rules of evidence distorts the concept and effectively eliminates appellate review of error. If the rule of evidence above enunciated by Chief Justice Stone is the law of this State and we allow its misapplication to be affirmed under the guise of "lack of abuse of discretion," of what value is the rule? Surely this question answers itself and precludes the use of the doctrine of discretion as a legal basis for the affirmance of the trial Court.

Indeed, the right of confrontation guaranteed by the Sixth Amendment to the United States Constitution and Art. 1, Sec. 6, Const. of Alabama, 1901, includes the right of cross-examination. *Douglas v. Alabama*, 380 U.S. 415, 85 S.Ct. 1074, 13 L. Ed.2d 934 (1965); *Wray v. State*, 154 Ala. 36, 45 So. 697 (1908); and reversal is mandated where the defendant's substantive rights to a thorough and sifting cross-examination of an important witness have been invaded. Tit. 7, § 443, Code of

Alabama 1940 (Recomp.1958), provides in express language:

"The right of cross-examination thorough and sifting, belongs to every party as to the witnesses called against him."

See also *Green v. State*, 258 Ala. 471, 64 So.2d 84 (1953).

The trial Court's discretion was here abused, in my opinion, particularly since the Court cut off defense counsel's effort to develop the line of questions designed to refresh the witness's recollection not merely by sustaining the district attorney's objections, but by affirmatively asserting to defense counsel: ". . . I'll just take the bull by the horns right now and say that you can't ask her any more questions from that statement . . .".

I would affirm the judgment of the Court of Criminal Appeals.

HEFLIN, C. J., concurs.