Petitioner, Robert Heath Pope, was convicted of assault in the second degree and was sentenced to serve a term of three years in the state penitentiary. The Court of Criminal Appeals affirmed the conviction, without opinion. 541 So.2d 86. We issued our writ of certiorari to review the following issues:
I. Whether the trial court improperly limited the petitioner's cross-examination of a state witness.
II. Whether the trial court erred in refusing to give the following instructions in its charge to the jury:
 A) An instruction regarding circumstantial evidence;
B) An instruction regarding self defense;
 C) An instruction regarding reasonable doubt and its being derived from any part of the evidence or the body of evidence as a whole.
We summarize the facts as follows:
On February 21, 1987, at approximately 8:00 p.m., Phillip Necklaus and Timmy Riggs arrived at Sherry Johnson's house, located in Cullman, Alabama, where a party was in progress. Ten to 12 persons were there, including Pope. At approximately 10:00 p.m., Necklaus asked Pope to leave the premises; at that time a fight began between the two. Subsequently, Pope, Debbie Ponder (who was then Pope's girlfriend and who is now his wife), Sherry Johnson, and two others left the premises; they returned after approximately one hour. Upon their return, Sherry Johnson did not enter the house, but walked to the rear of the house, where she remained in the backyard. Pope and Ponder entered the house, and a fight ensued, involving Pope, Ponder, Necklaus, and Riggs. Pope and Necklaus began fighting in the living room and continued the fight into the bedroom, where Pope broke a tequila bottle over Necklaus's head. Pope proceeded to cut Necklaus on his back, chest, and shoulders with the broken bottle, inflicting wounds requiring 46 surgical staples to close.
When Riggs heard the tequila bottle break, he came to Necklaus's assistance and found Pope wielding a piece of glass in his right hand. Pope then cut Riggs on his back, arm, and chest, inflicting wounds requiring over 50 stitches to close. *Page 133 
During the trial, the state introduced a physician's testimony that after his examination of Necklaus's and Riggs's wounds, he determined that they could have been fatal and that they would result in permanent disfigurement.
 I
During the trial, Sherry Johnson, a witness for the state, testified that she saw the fight between Pope and Riggs through the bedroom window while she stood behind the house. Pope's counsel sought to impeach this witness during cross-examination by attempting to admit a prior inconsistent statement that she had allegedly made during the preliminary hearing. Pope asserted that Johnson stated at the preliminary hearing that she was not near the house but was some distance from the house, and he argued that she, therefore, would not have had an opportunity to view the altercation through the window. He claims error and asserts that the trial judge unconstitutionally curtailed his cross-examination of witness Johnson during the following colloquy:
 "MR. PARKER: We would request — we were shown some pictures on discovery by the order of the court and we would request to have copies of those pictures of the house at this time.
 "THE COURT: Do you want to look at them? Are you going to offer them?
"MR. CARLTON: I will offer all of them.
 "THE COURT: Do you object? He can't dictate how you try your case.
"MR. CARLTON: I offer all of these pictures.
 "THE COURT: Do you want to identify them, let them be in, Mr. Parker, on this witness?
"MR. CARLTON: Yes.
 "MR. PARKER: These pictures he is talking about, he said all of them.
"MR. CARLTON: Objection.
 "THE COURT: Sustained. Go ahead and finish with the pictures.
 "MR. PARKER: I ask that I be given these on discovery, the pictures of the back of the house and the inside of the house.
 "THE COURT: Yes, sir, you can get them any time. Get finished with this witness. If you need to call her back —
"MR. PARKER: Then I am finished. She can get away.
 "A. I have been three days without any sleep —
 "THE COURT: Don't tell me, dear. Show me the pictures out of the —
 "MR. CARLTON: We don't have any questions on redirect examination.
 "THE COURT: All right. Sit there, dear. Let the record show there are no pictures — The Court has seen all of the State's pictures and there's no pictures of the outside of the house showing any windows, steps, or anything. Get finished with this witness, now, Mr. Parker.
 "MR. PARKER: If there are two pictures of the inside of the house looking out made —
 "THE COURT: I won't let you go into this at this time. They are not evidence, not outside of the house. These are pictures of the inside of the house. You can't lay a predicate with her. I sustain. Go ahead.
"MR. PARKER: They are pictures —
 "THE COURT: I understand what they are. Go ahead, now. Are you finished?
 "Q. (BY MR. PARKER): From the inside of the house — you went inside the house later, didn't you?
"A. Yes, sir.
 "Q. And the screen was up on the windows, wasn't it?
"A. I don't remember.
"MR. PARKER: That's all.
"MR. CARLTON: No questions.
"THE COURT: Do you excuse her from the rule?
"MR. CARLTON: Yes, sir.
"MR. PARKER: No, sir.
 "THE COURT: You are excused. You may leave us if you like. Thank you.
"A. Do I have to come back?
 "THE COURT: No, you do not have to come back. You are finished with her, Mr. Carlton? *Page 134 
"MR. CARLTON: Yes, sir.
"THE COURT: Not your witness, Mr. Parker.
"MR. PARKER: No, sir.
 "MR. PARKER: The defendant first would make an offer of proof that if allowed to have two pictures that the prosecution and the case agents have in their possession, sitting at the counsel table, that it would show that these two pictures were taken right after the police arrived some time that night, after the cutting is alleged to have happened, around, I think, 3:00 o'clock, something like that, and that they show that the condition of the window that the last witness, Sherry, said she looked through, that the condition of that window is that there was some sort of screen over that window which would tend to show that she didn't have a line of sight into the bedroom to which she said she saw. Secondly, we would offer —
"MR. CARLTON: Can I interrupt here?
 "MR. PARKER: Let me finish. Secondly, we would offer to prove, if allowed to use the transcript of the prior testimony, that she did not go up on the porch, that she did not look in a back door, she did not stand right underneath the window or ten or fifteen feet from the window, that she sat under a tree according to her prior testimony and her prior testimony at the preliminary trial she said that she saw a fight go on from that position."
Pope asserts error on a two-fold basis:
 1) He states that he was not allowed by the court to impeach Johnson with her statement made at the preliminary hearing that she did not stand directly underneath the window, but, rather, sat under a tree several yards from the house; and
 2) He argues that he should have been allowed by the state to use two photographs, in the state's possession, which depicted the bedroom in which the fight occurred, and which showed that the window in question was covered by a screen that obstructed Johnson's view of the fight.
Addressing Pope's first contention, we note that a criminal defendant has the right to a thorough and sifting cross-examination, but that right is not absolute. The latitude and extent of cross-examination are matters within the sound discretion of the trial court, and in the absence of abuse, that discretion is not reversible on appeal. See Connell v.State, 294 Ala. 477, 318 So.2d 710, on remand, 55 Ala. App. 717,318 So.2d 718, cert. denied, 294 Ala. 754, 318 So.2d 718
(1974); Turner v. State, 289 Ala. 97, 265 So.2d 883, on remand,48 Ala. App. 754, 265 So.2d 885 (1972).
The proper predicate for the admission of a prior inconsistent statement must be established before the statement is admitted. Ex parte Watts, 471 So.2d 505 (Ala. 1985). This predicate must specify the time when the statement was made, the place where the statement was made, the content of the statement, the person to whom the statement was made, and the substance of the statement. See C. Gamble, McElroy's AlabamaEvidence, § 157.01(1) at 329 (1977). Our review of the record reveals that counsel for the defendant failed to lay a proper predicate to impeach Johnson's testimony; therefore, no error can be found in the trial court's foreclosing of his cross-examination of this witness.
Regarding Pope's second claim of error, evidence was presented that the photographs in question, state's exhibits 6 and 8, were presented to petitioner during pretrial discovery, but that Pope chose not to copy the photographs. We cannot hold the trial judge in error for not ordering the state to allow Pope to use these photographs, which were not in evidence at the time of Pope's request. We further cannot hold that the state's refusal was a violation of Brady v. Maryland,373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), because the state had previously complied with a Temp. Rule 18, A.R.Cr.P., motion by defendant in which these photographs were disclosed by the state. Therefore, no error can be found on this issue.
 II
Turning our attention to Pope's second claim of error, which is that the trial *Page 135 
court erred in not giving jury instructions regarding circumstantial evidence, self defense, and reasonable doubt, we find no merit in this contention and affirm as to this issue. We held in Ex parte Bell, 475 So.2d 609 (Ala. 1985), that in order to preserve an issue of refused jury instructions, it is necessary for the proponent of the instructions to recite briefly the relevant facts in connection with the jury charge. Our review of the record reveals that counsel for petitioner failed to recite the necessary facts and, therefore, we deem his statements regarding circumstantial evidence, self defense, and reasonable doubt to be abstract and not reviewable in this appeal.
For the foregoing reasons, the judgment of the trial court is due to be, and it hereby is, affirmed.
AFFIRMED.
HORNSBY, C.J., and MADDOX, ALMON and STEAGALL, JJ., concur.