This case was originally assigned to another judge on the Alabama Court of Criminal Appeals. It was reassigned to Judge Cobb on January 17, 1995.
Chester Richerson, the appellant, was convicted of sexual abuse in the first degree, a violation of Ala. Code 1975, §13A-6-66(a)(3). He was sentenced to seven years in the penitentiary. After a pretrial hearing, the trial court ruled admissible out-of-court *Page 132 
statements made by the child victim, R.R., pursuant to Ala. Code 1975, § 15-25-32(2)(a)(5) and § 15-25-37. The issues raised on appeal concern the Child Physical and Sexual Abuse Victim Protection Act. Ala. Code 1975, § 15-25-30 through § 15-25-40.
 FACTS
The following facts were adduced at trial. The appellant is the father of the three-year-old victim, R.R. Homer Salter lived next door to R.R. and her family and spoke with the appellant and R.R. almost everyday. He was outside at approximately 3:30 a.m. one summer morning in 1991 and he heard R.R. "screaming and . . . hollering [from the appellant's bedroom]: 'Take it out, it hurts.' " Then he heard the appellant say: "Hush, I be through in a minute." Salter stated that "[i]t sounded like somebody was killing [R.R.] or tearing her up." R. 238-39. After a few moments Salter heard footsteps "walking down the hall [of the appellant's house] towards the bathroom and the racket . . . stopped all at once." R. 245. Salter reported what he had heard to the Department of Human Resources (DHR). Six months later Salter saw R.R. at the courthouse and "[s]he . . . got in my lap and I said: 'Hello, [R.R.].' And she said: 'I ain't [R.R.] no more.' She said: '[the appellant] hurt [R.R.]." R. 244.
Sue Joy is the family supervisor for the family children services program of DHR in Baldwin County. She works with sexually abused children while they are in foster care. She was presented as an expert witness for the State. She testified that she received a telephone call on Saturday July 20, 1991, at 7:30 a.m. from Homer Salter reporting the possible sexual abuse of R.R. She immediately made the necessary arrangements to have R.R. and her siblings picked up by the DHR and to have each child examined by a physician on July 20. R.R. told Joy only that "she had been hurt," but not by whom. R. 367. It was Joy's opinion, based on R.R.'s demeanor, how frightened she was, and the medical evidence that "[R.R.] had gone through some traumatic event." R. 373. Ultimately R.R. was placed in a foster home.
Doctor Rhoda Burns, a pediatrician at Eastern Shore Children's Clinic in Mobile, was presented as an expert witness for the State. She examined R.R. on Saturday July 20, 1991. R.R.'s genital examination revealed characteristics consistent with someone having had sexual intercourse within 24 to 36 hours before the examination. It was Dr. Burns's opinion that R.R. had been sexually abused.
Mary Burns, a counselor at the Baldwin County Mental Health Center, was presented as an expert witness for the State. In September 1991 R.R. told Burns that she had been sexually abused. On one occasion R.R. reenacted what had happened by taking "the pants off the [appellant] doll and [R.R.] put [the doll representing the appellant] on top of the little baby [R.R.] doll, and moved them back and forth. And then she became very upset." R. 317. On another occasion R.R. told Burns "through [the use of a] turtle puppet that her mother told Chester to stop because he was hurting [R.R.]. . . . She stated that it happened many times, not just once." R. 324. R.R. has also "complained that . . . she was afraid that [the appellant] was going to find her and hurt her again." R. 332. R.R. has also "asked [Burns] . . . why her mother would let that [sexual abuse] happen." R. 335. Burns concluded that it was her opinion that "[R.R.] has been sexually abused by [the appellant]." R. 338.
Karen Dixon was R.R.'s foster parent from September 16, 1991, until April 1992. She testified that R.R. would not permit anyone to address her by her nickname because that was the name the appellant used to address her. Once during a bath, R.R., referring to her genitals, said, "Don't touch me down there, that's where [the appellant] had hurt me" and "Don't touch me there." R. 452. During another bath R.R. stated that "[the appellant] had touched my teetee." R. 463. On another occasion R.R. started crying after being called "precious" and she said, "Don't call me precious, don't ever call me precious. That's what [the appellant] called me while he was hurting me." R. 455. R.R. also told Dixon that "her mom knew that [the appellant] and [her brother] had hurt her." R. 453. She told Dixon that "[her mother] *Page 133 
knew [the appellant] hurt me because she cleaned ['that blood'] up." R. 455, 462. After a visit with her mother, R.R. told Dixon that "[her mother] told [her] that if [she] said [the appellant] didn't hurt [her], [her mother] promised that she wouldn't let [the appellant] hurt [her] anymore if [she] came home." R. 471.
Sharon Whisonant is a social worker with the Baptist Children's Home in Mobile. Whisonant was R.R.'s social worker when R.R. was placed in a foster home. R.R. told Whisonant that the appellant had "hurt [her] in a private place." R. 405.
Loretta Ponquinette, a counselor at Lemoin Center, a Mobile mental health facility testified that R.R. disclosed allegations of sexual abuse the first time she saw R.R. in June 1992. According to Ponquinette, R.R. was noticeably aggressive toward the doll used in therapy that represented her father. R.R. also drew a large penis on drawings of her father.
Wendy McIntosh, a social worker in the foster care unit of DHR in Baldwin County, had been working with R.R. since June 1992. R.R. told McIntosh that she did not like living with her parents because "[the appellant] hurt me and [her sister] and gave us bad touches in the wrong place. . . . [and] I would get hurt again [if she went home]." R. 478. McIntosh also testified that R.R.'s 11-year-old sister, C.R., stated that "[the brother, V.R.,] had messed with [C.R.] 'too' . . . [and] while [the appellant] was molesting the girls that [the mother] would be messing with the boys." R. 510-11.
Donald Rolie worked in the investigation follow-up and foster care division of DHR at the time of the incident. He testified that he heard R.R. tell her mother that she was not going home because "[V.R.] and [the appellant] hurt me." R. 522.
John Stewart is an investigator with the Baldwin County Sheriffs Department assigned to the child sexual assault unit. He was contacted by DHR on the morning of July 20, 1991, to serve a court order on the appellant, which ordered that the appellant's children be taken by DHR for medical examinations based on the suspicion of child abuse. The appellant told Stewart that he and his wife sleep in twin beds because he has a painful back injury. He told Stewart that R.R. slept in their room in the bed with his wife. R.R.'s mother told Stewart that on the morning of July 20 R.R. had screamed out at 3:00 a.m. or 4:00 a.m. when she hurt her finger and R.R. had to be taken to the bathroom to "doctor" it.
 I
The appellant raises several constitutional challenges to Ala. Code 1975, §§ 15-25-30 through -40. The only constitutional challenge preserved for appellate review at the trial concerned the Confrontation Clause of the United States Constitution. United States Const., Amend. VI. " 'The statement of specific grounds of objection waives all grounds not specified, and the trial court will not be put in error on grounds not assigned at trial.' Ex parte Frith, 526 So.2d 880, 882 (Ala. 1987). 'The trial court cannot be placed in error on grounds not asserted. . . . The court was required to pass only upon the ground of the objection specified by the appellant and those not announced are waived.' Johnson v. State, 421 So.2d 1306, 1311
(Ala.Cr.App. 1982)." Riddle v. State, 661 So.2d 274
(Ala.Cr.App. 1994). " 'Even constitutional rights have to be seasonably raised in the trial court before they will be considered by this Court.' Block v. State, 455 So.2d 1011, 1012
(Ala.Cr.App. 1984)." Rika v. State, 587 So.2d 1054
(Ala.Cr.App. 1991).
Sections 15-25-31 and -32 Ala. Code 1975, permit a child witness to be considered unavailable to testify. Unavailability under the Alabama statute is not limited to physical unavailability but includes the inability of a child to testify under any conditions caused by a variety of infirmities.
 "Section 15-25-32 states that an out-of-court statement of a victim can be admitted in two situations: where the victim testified by means of a videotaped deposition or closed circuit television and was subject to cross-examination concerning his or her out-of-court statements (subsection 1), or where the child is unavailable, i.e., the child is dead, the defendant has intentionally removed the child from the *Page 134 
court's jurisdiction, the child has suffered a total failure of memory, the child is physically or mentally disabled, the child is incompetent, or the child would most probably suffer severe emotional trauma from testifying at the proceeding (subsection 2)."
Latimer v. State, 659 So.2d 129 (Ala.Cr.App. 1994) (victim gave a videotaped statement).
The appellant contends that § 15-25-32(2) violates his Sixth Amendment right to confront an adverse witness. The appellant argues that this court should overrule Dilbeck v. State,594 So.2d 168, 174 (Ala.Cr.App. 1991) ("the Confrontation Clause does not erect a per se rule barring the admission of prior statements of a declarant who is unable to communicate to the jury at the time of trial") and "return to its previous position that a defendant be given an opportunity, if it only be indirect via closed-circuit television, to cross-examine an accusing witness against him. . . . [because 18 U.S.C. § 3509
is the] current interpretation of federal law on this issue." Appellant's brief at pages 12-13.
The appellant did not request that closed circuit television or videotape be used under § 15-25-32(1) as an alternative to finding the child unavailable to testify under § 15-25-32(2). See Appellant's brief at page 18 ("There was no discussion as to whether the child would be able to testify via closed circuit television or by videotaped deposition."). "It is familiar law that an adverse ruling below is a prerequisite to appellate review. We generally cannot consider arguments made for the first time on appeal." Allen v. State, 659 So.2d 135
(Ala.Cr.App. 1994) (citation omitted).
We note that 18 U.S.C. § 3509, entitled, "Child victims' and child witnesses' rights," permits questioning of a traumatized child witness via closed circuit television. "18 U.S.C. § 3509
was promulgated, specifying the procedures to be used in federal courts to allow a child victim to testify via closed circuit." United States v. Farley, 992 F.2d 1122, 1124 (10th Cir. 1993). Section 15-25-2, Ala. Code 1975, entitled "Prosecution for physical or sexual offense or exploitation involving child under age 16 — Videotaped deposition of victim or witness under age 16; supreme court rules; costs; protective order," specifies the procedure used in Alabama courts to allow a child victim to testify via closed circuit.
To ensure that the appellant is not prejudiced by the denial of the right to confront his accuser on cross-examination, the Alabama statute first requires that a determination that the child is mentally or physically unable to testify be made and then a separate determination that the child's "statement possesses particularized guarantees of trustworthiness" be made §§ 15-25-32(2)(b) and -37. "[The United States Supreme Court] ha[s] repeatedly held that the [Confrontation] Clause permits, where necessary, the admission of certain hearsay statements against a defendant despite the defendant's inability to confront the declarant at trial." Fortner v. State,582 So.2d 581, 584 (Ala.Cr.App. 1990), cert. denied, 582 So.2d 587
(Ala. 1991.) (quoting Maryland v. Craig, 497 U.S. 836, 846-48,110 S.Ct. 3157, 3164, 111 L.Ed.2d 666 (1990).
We adhere to our decision in Dilbeck, decided August 23, 1991, that,
 " ' "the Confrontation Clause does not erect a per se rule barring the admission of prior statements of a declarant who is unable to communicate to the jury at the time of trial." [Idaho v. Wright, 497] U.S. [805, 823-25,] 110 S.Ct. [3139] at 3151[, 111 L.Ed.2d 638 (1990) ]. [Provided that] incriminating statements admissible under an exception to the hearsay rule are not admissible under the Confrontation Clause unless the prosecution 1) produces, or demonstrates the unavailability of, the declarant whose statement it wishes to use and 2) unless the statement bears an adequate "indicia of reliability." ' Fortner, 582 So.2d at 584."
594 So.2d at 173-74.
 II
The appellant contends that § 15-25-34 permits the admission of hearsay testimony without the corroboration required underIdaho v. Wright, 497 U.S. 805, 110 S.Ct. 3139, 111 L.Ed.2d 638
(1990). According to the appellant, under Idaho v. Wright the "particularized *Page 135 
guarantees of trustworthiness" of a presumptively unreliable statement cannot be proven based upon "the trustworthiness of other evidence at trial." Idaho v. Wright, 497 U.S. at 823,110 S.Ct. at 3150.
 "[T]he use of corroborating evidence to support a hearsay statement's 'particularized guarantees of trustworthiness' would permit admission of a presumptively unreliable statement by bootstrapping on the trustworthiness of other evidence at trial, a result we think at odds with the requirement that hearsay evidence admitted under the Confrontation Clause be so trustworthy that cross-examination of the declarant would be of marginal utility.
"Idaho, 497 U.S. at 823 [110 S.Ct. at 3150]."
Appellant's brief at page 13-14.
In ruling that the act does not violate an appellant's Sixth Amendment right, this court in Fortner v. State, 582 So.2d 581,584 (Ala.Cr.App. 1990), cert. denied, 582 So.2d 587 (Ala. 1991) (child victim testified at trial) stated: " 'To be admissible under the Confrontation Clause, hearsay evidence used to convict a defendant must possess indicia of reliability by virtue of its inherent trust worthiness. . . .' " Fortner, 582 So.2d at 584 (quoting Idaho v. Wright supra, (child witness did not testify and prosecution failed to prove reliability of child's statements)).
Section 15-25-34 does not conflict with Idaho v. Wright.
Under Alabama's statute, a determination that a child's out-of-court statements will be admitted because the child is unavailable under § 15-25-32(2)(a) includes a separate determination under § 15-25-37 that the child's "statement possesses particularized guarantees of trustworthiness." The separate finding that the statement is "trustworthy" under §15-25-37 is in addition to the requirement found in § 15-25-34
providing that the child's statement be admitted only when "there is corroborative evidence of the act."
Alabama's statute requires the co-existence of trustworthiness and corroboration to ensure that the "hearsay evidence admitted under the Confrontation Clause be so trustworthy that cross-examination of the declarant would be of marginal utility." Idaho, 497 U.S. at 823, 110 S.Ct. at 3150.
 "As noted in White v. Illinois, [502] U.S. [346, 356-360], 112 S.Ct. 736, 743-744, 116 L.Ed.2d 848
(1992), 'the question of what in-court procedures are constitutionally required to guarantee a defendant's confrontation right once a witness is testifying . . . is quite separate from that of what requirements the Confrontation Clause imposes as a predicate for the introduction of out-of-court declarations.' "
Hudgins v. State, 615 So.2d 1297, 1299 (Ala.Cr.App. 1993) (emphasis in original) (objection to the admission of hearsay statements made by three-year-old victim of sexual abuse who did not testify at trial were not preserved for appellate review).
 III
The appellant contends that the six-month delay between the hearing as to R.R.'s availability and the trial merited a second availability hearing. The court correctly ruled that the appellant's request for a new hearing was untimely.
 "[I]t's just not well taken, frankly, that you would go into that at all at this point and it was already resolved back in August and you didn't file anything to object to the use of this, the statements that were proffered to you more recently.
". . . .
 "Now, those questions that you are asking Ms. Burns may go to the credibility of the out-of-court statements that she's making. If she's going to repeat something that [the victim] said during a session and [the victim] is telling her something different yesterday than she told her back in August, then you can impeach her on that and you can cross examine her about that.
". . . .
 "So you may certainly ask her about the substance of what [the victim] said, but to approach this as an attack on the previous decision that the witness is not competent to testify and taking us all the way back to August, we simply can't go back to August and redo that, but you are certainly welcome in questioning Ms. Burns and the *Page 136 
other witnesses at length about the changes and ask them what the implications might be; are there any changes in the out of Court statements since [August].
". . . .
 "I had a list of the statements that were going to be given today and now I hear statements coming up from things that were said yesterday. . . . [Y]ou would be sustained to an objection to something of that nature happening in the interim because this statute requires that the statements to be specifically given to you that are going to be used so that you can respond to those and so that you can be ready to deal with that when the time comes.
". . . .
 "This is one of the reasons why I instructed the Jury in the middle of the trial as to what the law was so that they would understand that you did not have a right to cross examine those statements and I will instruct them again as to what the usual right to confront the witness is and why . . . you did not receive an opportunity to cross examine the [child] witness."
R. 305-09.
The appellant has not shown the trial court's ruling to be an abuse of discretion. The trial court ruled that any statements offered by the prosecution that were not presented at the original hearing and which the appellant had not been given notice as required by § 15-25-35 were subject to exclusion upon the appellant's objection. " '[O]n appeal, the party claiming that a trial judge has abused his discretion in such aspect bears the burden of persuasion.' Connell v. State, 294 Ala. 477,481, 318 So.2d 710, 714 (1974)." Wright v. State,641 So.2d 1274 (Ala.Cr.App. 1993) (cross-examination within the discretion of the trial court absent an abuse of discretion). Cf. Miles v. State, 624 So.2d 700 (Ala.Cr.App. 1993) (granting a new trial is discretionary with the trial court absent a showing of abuse); Johnson v. State, 620 So.2d 679
(Ala.Cr.App.) (granting a mistrial or continuance is within the discretion of the trial court and will not be disturbed on appeal absent a showing of abuse of discretion), rev'd on other grounds 620 So.2d 709 (Ala. 1993); Burks v. State, 600 So.2d 374
(Ala.Cr.App. 1991) (granting of youthful offender status within the trial courts discretion after appropriate investigation).
As in Fortner, supra, we do not need to determine whether §15-25-36 requires that the jury be instructed after admission of each out-of-court statement. Fortner, 582 So.2d at 587. We also take this opportunity to point out the excellent instruction given in Fortner, 582 So.2d at 587, where the trial court advised the jury that the weight and credibility, if any, to be given to the out-of-court statements was for the jury to determine. There was no objection to the trial court's instructions in the present case.
 IV
The appellant contends that the trial court committed reversible error in finding the child witness unavailable to testify under § 15-25-32(2)(a) and, in the alternative, erred in failing to require the child to testify via closed circuit television or videotaped deposition.
 A
The appellant did not request a closed circuit or videotaped deposition; the issue is therefore waived. " 'The statement of specific grounds of objection waives all grounds not specified, and the trial court will not be put in error on grounds not assigned at trial.' Ex parte Frith, 526 So.2d 880, 882 (Ala. 1987)." Callahan v. State, 644 So.2d 1329, 1331
(Ala.Cr.App. 1994). As the appellant concedes in his brief, "[t]here was no discussion as to whether the child would be able to testify via closed circuit television or by videotaped deposition." Appellant's brief at page 18.
 B
Sufficient evidence was presented to allow the trial court to find that the child's "statements possesses particularized guarantees of trustworthiness under section 15-25-32(2)(b)." The appellant argues that 3 of the 13 factors listed in §15-25-37 "point in favor of disallowing the out-of-court statements." Appellant's brief at page 21. Section 15-25-37 *Page 137 
provides that in making this determination the trial court "shall consider any one, but is not limited to" any one of 13 factors listed in the section. If the appellant's allegation was true, the trial judge could still base his decision on any one of the ten remaining factors plus any non-enumerated factor.
 "In an ore tenus proceeding, it is the duty of the trial court to resolve conflict in testimony and render judgment accordingly. Jones v. LeFlore, 421 So.2d 1287 (Ala.Civ.App. 1982). Where the trial court resolves a factual issue on conflicting evidence, the reviewing court may not reverse it if there is any credible evidence to support the judgment. Jones v. Jones, 470 So.2d 1207
(Ala. 1985)."
Big Thicket Broadcasting Co. v. Santos, 594 So.2d 1241, 1243-44
(Ala.Civ.App. 1991).
Based on the above, we find that the ruling of the trial we find that the ruling of the trial court is due to be, and is hereby, affirmed.
AFFIRMED.
All the Judges concur except LONG, J., who recuses.